## SOUTHERN RAILWAY · COMPANY v. RAILROAD COMMISSION OF INDIANA.

[Railroad Commission No. 5.    Filed February 7, 1908.    Rehearing denied June 10, 1908.]

1. RAILROAD COMMISSION.—*Orders.*—*Complaint.*—In proceedings before the railroad commission strictness of pleading is not necessary; and such commission may frame its orders irrespective of the relief asked for in the petition.    p. 95.

2. PLEADING.—*Complaint.*—*Sufficiency of.*—If the finding and order of the railroad commission, declaring a freight rate unreasonable and establishing a new rate, are justified, it is immaterial what ruling is made on the objections to the petition, or whether the petition states facts sufficient to show unjust discrimination.    p. 95.

3. RAILROAD COMMISSION. — *Freight Rates.*—*Evidence.*—Evidence that other railroads extending through similar country had lower rates, and that the defendant company had a less rate for the same freight, when shipped in the opposite direction, authorizes the reduction of the company's rates, where such company fails to show peculiar conditions necessitating such higher rate, the question being one of fact.    p. 95.

Southern R. Co. *v.* Railroad Com., etc.—42 Ind. App. 90.

4. RAILROAD COMMISSION.—*Freight Rates.—Adjustment.—Development of Country.*—Railroad companies have the right to adjust rates in such manner as to assist in the development of the country where situated. p. 96.

5. SAME.—*Freight Rates.—Points Considered.—Burden of Proof.*— In determining a proper freight rate the railroad commission should consider the cost of the road and its equipment, cost of maintenance, cost of operation, amount of business, competition, character of freight, charge by others for similar services, and other things affecting the matter; and where the petitioner has produced the evidence within his power, making a *prima facie* case, the burden is upon defendant to produce evidence showing the reasonableness of the company's rates. p. 97.

6. SAME.—*Freight Rates.—Intrastate.—Constitutional Law.*—The railroad commission has the legal right to establish freight rates between New Albany and Boonville, and New Albany and Oakland City, such points being wholly within the State. p. 98.

7. SAME.—*Freight Rates.—Establishment.—Subsequent Changes.*— Rates fixed by the railroad commission are not void, because in perpetuity, since they may subsequently be changed by the commission. p. 98.

8. SAME. — *Rates. — Establishment.— Confiscation.—Constitutional Law.*—The railroad commission act (Acts 1905, p. 83, §§5405a-5405y Burns 1905) is not void on the ground that it compels railroad companies to accept a rate established by the commission before it has time to have such rate declared confiscatory, the presumption being that the fixed rate is lawful. p. 98.

9. SAME. — *Rates.— Establishment. — Judicial Action. — Constitutional Law.*—The railroad commission act (Acts 1905, p. 83, §§5405a-5405y Burns 1905) is not unconstitutional on the ground that the commission, having no judicial powers, has no power under the act to establish a rate until it finds the company's rate to be unreasonable, and must therefore exercise a judicial power to determine the unreasonableness of such rate. p. 100.

10. SAME. — *Rates.—Establishment.—Appeal.—Judicial Acts.*—The railroad commission act (Acts 1905, p. 83, §§5405a-5405y Burns 1905) is not void on the ground that on appeal from the commission's order fixing a rate the Appellate Court has no power to determine a proper rate, since, if it be conceded that the Appellate Court cannot revise the rate appealed from, the courts are open to the companies to restrain the enforcement of the fixed rate. p. 101.

11. CONSTITUTIONAL LAW.—*Special Privileges.—Railroads.—Interurban Railroads.—Railroad Commission.*—The railroad commission act (Acts 1905, p. 83, §§5405a-5405y Burns 1905) is not void, as class legislation and as granting special privileges, in that it

applies to steam railroads and not to interurbans, there being room for classification—at least as to freight rates. p. 102.

12. STATUTES.—*Divisibility.*—*Railroad Commission Act.*—*Rates.*—*Passenger.*—*Freight.*—The railroad commission act (Acts 1905, p. 83, §§5405a-5405y Burns 1905) is separable, and even if that portion relating to passenger rates be invalid, that relating to freight rates would not be affected. p. 104.

From Railroad Commission of Indiana; *Union B. Hunt,* Chairman, *Charles V. McAdams* and *William J. Wood,* Commissioners.

Appeal from an order of the Railroad Commission of Indiana, by the Southern Railway Company. *Order confirmed.*

*Alex. P. Humphrey* and *John D. Welman,* for appellant.

*James Bingham,* Attorney-General, *Merrill Moores* and *Charles V. McAdams,* for appellee.

RABB, J.—Edward T. Slider, who avers that he is a coal dealer and shipper doing business in the city of New Albany, Indiana, on the appellant's line of railroad, filed his petition with the Railroad Commission of Indiana, alleging that the appellant's freight rates on coal from said city of New Albany to certain named stations on appellant's line of road in this State west of New Albany were excessive and unreasonable, and claiming also that in the fixing of the appellant's schedule of freight rates on coal it had unjustly discriminated against the petitioner and other shippers of coal from New Albany in favor of coal shippers at Oakland City and Boonville, and that it had unjustly discriminated in its said freight rates against the city of New Albany and in favor of said localities of Oakland City and Boonville. Such proceedings were had on such petition as resulted in an order of the commissioners revising the freight rates of appellant on coal between the points named, and establishing a lower rate than that fixed by the appellant.

The case is brought to this court under the provisions of

sections six and six and one-half of the act of 1905 (Acts 1905, p. 83, §§5405f, 5405g Burns 1905), creating the railroad commission, and a concise statement of appellant's causes of complaint is filed in this court.

The objections urged here against the proceedings of the commission are: (1) That the petition is insufficient to form a basis of any action by the commission.; (2) that the evidence is not sufficient to sustain the allegation of unjust discrimination contained in the petition; (3) that there is no proof that the existing charges of the appellant were unreasonable, or that the rates ordered by the commission were reasonable; (4) that the appellant's motion to dismiss the petition should have been sustained, because the evidence shows that the coal shipped by the petitioner was interstate commerce; (5) that the rates fixed by the order of the commission are in perpetuity; (6) that the rates fixed by the commission deprive the appellant of its property without due process of law, in (a) that it denies to the appellant the right to collect the rates fixed by it for transportation of freight, in the absence of a judicial determination that such rates are unreasonable; (b) that the law gives the commission the power to fix rates only in cases where the railroad companies have made unreasonable rates, and that the commission, having no judicial powers, cannot determine the question of reasonable rates; (c) that the remedy afforded by the act, to the party aggrieved by the commission's decision, of appeal to this court is ineffective, for the reason that this court, being a judicial body, cannot exercise legislative power and revise the rates fixed by the commission, as contemplated by the provisions of the act granting the right of appeal to this court; (7) that the act denies to steam roads the equal protection of the law, and grants to interurban roads immunities not permitted to the steam roads.

We will consider these propositions in the order in which they are presented. The petition on which this matter

was heard before the railroad commission was in two paragraphs. The first paragraph, after the formal averments regarding the petitioner's business and the location of the appellant's road, avers that the appellant refuses to transport coal for the petitioner from New Albany westward over its road to Georgetown for less than fifty cents per ton, to Corydon for less than seventy cents per ton, to Marengo for less than eighty cents per ton, to English for less than eighty cents per ton, to Huntingburgh for less than $1 per ton, to Oakland City for less than $1.20 per ton, to Jasper for less than $1.10 per ton, to Rockport for less than $1.20 per ton, to Boonville for less than $1.20 per ton, while it transports coal from the Indiana mines situated around Oakland City and Boonville eastwardly to the city of New Albany, a distance of 100 miles, at a rate of forty cents per ton; that the expense of transporting freight in one direction over appellant's road is substantially the same as in the other; that there is practically no competing lines between the points; that these rates create an unjust discrimination against the city of New Albany and the coal shippers in and near said city, and give to Oakland City and shippers in and near that place an undue preference over shippers of coal in and near New Albany, and particularly the petitioner.

The second paragraph avers substantially the same facts that are set up in the first, and also alleges that the rates charged by appellant upon coal shipments from New Albany to the points named are excessive and unreasonable, and sets out a schedule of rates which it avers are reasonable.

It is contended that the facts set forth in the first paragraph of the petition fail to show an unjust discrimination against the city of New Albany or the petitioner, and that appellant's special objection thereto should have been sustained; that the second paragraph does not state facts showing that the existing rates established by the railroad

company are unreasonable, and that the commission was absolutely bound either to accept the rates specified in the petition as being reasonable, or to reject the petition, even though they should find that the rates established by the company were unreasonable.

No strictness of pleading is required in proceedings before the railroad commission, and it is vested with ample power to frame its orders, as the substantial justice of the case may require, irrespective of the relief asked for in the petition. *Chicago, etc., R. Co.* v. *Railroad Com., etc.* (1906), 38 Ind. App. 439.

The finding of the commission was that the established rates of the company for freight on coal from New Albany to the points named in that order were unreasonable, and different rates were established by the commission. If this finding and order were justified, it was immaterial what ruling the commission made on the objections to the first paragraph of the petition, or whether either paragraph stated facts sufficient to show unjust discrimination. The second paragraph in plain terms sets forth what appellee's freight rates on coal were from New Albany to the points named, and charged in concise and unmistakable terms that these rates were unreasonable. This statement fully apprised appellant of what it was required to meet before the commission. It was unnecessary to set out in the petition evidentiary facts by which it was proposed to prove that the rate established by the company was unreasonable. The objections to this paragraph of the petition were properly overruled.

It is contended that the evidence is insufficient to show that the rate established by the company was unreasonable, or that the rates established by the commission were reasonable. There was evidence before the commission as to the rates charged for freight on coal by numerous other railroads in the neighborhood where the conditions, with reference to the character of the country

through which the road ran, were similar to the country appellant's road passed through, where the grades must necessarily have been much the same, where the cost of constructing roads and of moving trains could not have been materially different, and where the volume of the traffic must have been about the same, and showing a much lower rate than the rate established by the appellant for a similar haul; and the rate shown in evidence, established by the appellant, for the same character of freight going over its road between the same points in the opposite direction was proper to be considered, the evidence showing that the grades on the road and the expense incidental to moving the trains could not have been essentially different going in one direction from what they were going in the other.

It is true the company is not bound to make the same rate for freight going in either direction between the same points on its road, and there may be many reasons why the railroad company would be justified in making a wide difference in such rates. There may exist reasons that will justify a railroad company in giving rates for the transportation of certain articles over its road for even less than the actual expense of transportation. It is to the interest of the railroad company and of the public at large to encourage the full development of all the natural resources of the country through which a road passes, and the company has a right to adjust its freight rates in such manner as will best promote this end. But the railroad commission and this court are justified, in the absence of any showing to the contrary, in assuming that freight rates fixed by the railroad company are such as will be remunerative to the company, and, where it fixes a rate on coal at fifty cents per ton from Oakland City to New Albany, we have a right to assume, in the absence of a contrary showing, that the company can carry the freight at that rate at a profit. And where there can be no very substantial difference in the cost of moving trains in one direc-

tion from moving them in the other, the commissioners would be fully justified in finding that a freight rate established by the company that is more than double between the same points in one direction over its road from what it is in the other, is unreasonably high, and that a reduction of the high rate so as to leave it from twenty-five to fifty per cent higher than the low rate will not be unreasonable. The question is one of fact to be determined from all the evidence that can be gathered upon the subject. *East Tenn., etc., R. Co.* v. *Interstate Commerce Com.* (1901), 181 U. S. 1, 21 Sup. Ct. 516, 45 L. Ed. 719; Judson, Interstate Commerce, §175.

It is true that a great variety of things are proper to be considered in fixing a rate by the rate-making power, among other things, the cost of building and equipping the road, the expense of operating it, the cost of maintenance, the volume of business, competition, character of freight to be transported, the usual charge by others engaged in the same business for similar services. Many of these things essential to enable the commission fully to understand and intelligently to act in the matter are peculiarly within the knowledge of the railroad company whose rate is challenged, and are not obtainable by the party making the challenge. This is true with reference to the capitalization of the road, the expense of its construction, expenses of maintaining and operating the same, the peculiar conditions existing that would justify a low rate in one case, and a high one for apparently similar services on their own line in another. And where the petitioner has presented all the evidence reasonably within his reach, and such evidence makes a *prima facie* case, it rests upon the railroad company to bring before the commission such facts as are peculiarly within its knowledge that will tend to sustain the reasonableness of their charges in the given case. *Indianapolis St. R. Co.* v. *Darnell* (1904), 32 Ind. App. 687.

It is claimed on the part of appellant that the proof shows that the commission had no jurisdiction to hear the matter in controversy, for the reason that it appeared that the coal handled by the petitioner was interstate traffic.     This contention cannot be sustained.  What the petitioner complains of is the local freight rate from New Albany to points in this State on appellant's road west of that point, and not the freight on some particular shipment.  It is purely a local freight rate that is in controversy.

6.

Nor can the contention of appellant that the rates fixed by the commission are in perpetuity affect the question.  If they were reasonable and just, and the commission had the power to make them, they would stand until changing conditions would affect the rights of the railroad company.  If the rates were established in the first instance by the legislature, they would necessarily be in perpetuity, that is, they would stand until changed by legislative enactment or declared void by the court as being confiscatory;  and if they were reasonable and just this could not be done.     This rate-making power possessed by the legislature it has transmitted to the Railroad Commission of Indiana.     We think, however, that the railroad commission act, fairly construed, gives the commission power to revise any rate fixed by it, on the petition of a railroad company, or any other party interested.

7.

It is earnestly insisted that the railroad commission act (Acts 1905, p. 83, §§5405a-5405y Burns 1905) is void because it deprives a company of its property without due process of law, in that it prohibits a company from collecting the rates fixed by it before such rates have been judicially held to be unreasonable.  Conceding the power in the commission to establish rates, the rates established by it will be presumed to be reasonable, and will be effective until attacked and set aside by judicial proceeding.  *Chicago, etc., R. Co.* v. *Minnesota* (1890), 134 U.

8.

S. 418, 10 Sup. Ct. 462, 33 L. Ed. 970; *St. Louis, etc., R. Co.* v. *Gill* (1895), 156 U. S. 649, 15 Sup. Ct. 484, 39 L. Ed. 567; *Southern Pac. Co.* v. *Board, etc.* (1896), 78 Fed. 236.

The Railroad Commission of Indiana stands for the legislature, and it could hardly be contended that the legislature would have no power to fix a maximum rate of transportation for a public-service common carrier until there had been a judicial declaration that the rate fixed by the carrier was unreasonable. Upon this question we concur in the views expressed by Mr. Justice Miller in the case of *Chicago, etc., R. Co.* v. *Minnesota, supra:* "(1) In regard to a business of common carriers limited to points within a single state, that state has the legislative power to establish the rates of compensation for such carriage. (2) The power which the legislature has to do this can be exercised through a commission which it may authorize to act in the matter, such as the one appointed by the legislature of Minnesota by the act now under consideration. (3) Neither the legislature, nor such commission acting under the authority of the legislature, can establish arbitrarily and without regard to justice and right a tariff of rates for such transportation, which is so unreasonable as practically to destroy the value of property of persons engaged in the carrying business on the one hand, nor so exorbitant and extravagant as to be in utter disregard of the rights of the public for the use of such transportation on the other. (4) In either of these classes of cases there is an ultimate remedy for the parties aggrieved in the courts for relief against such oppressive legislation, and especially in the courts of the United States, where the tariff of rates established, either by the legislature or by the commission, is such as to deprive a party of his property without due process of law. (5) Until the judiciary has been appealed to to declare the regulations made, whether by the legislature or by the commission, voidable for the reasons mentioned, the tariff of rates so fixed is the law of the land, and must

be submitted to both by the carrier and the parties with whom he deals.'' This view has been quoted with approval by the Supreme Court in *St. Louis, etc., R. Co.* v. *Gill, supra.* Such being the law, it follows that the freight rate established by the commission cannot be said to be in violation of the constitutional provision declaring that the property of a citizen shall not be taken without due process of law.

But it is contended that the commission had no power under the act to establish rates until the rate established by the company had been found to be unreasonable, and 9. that the question as to whether the rate fixed by the company was reasonable or·unreasonable was a judicial question, and could not be determined by the commission, which exercises not judicial but legislative power; in other words, that, while the act undertook to clothe the commission with power to establish rates, yet it could not vest it with power to ascertain the facts essential to predicate its exercise of power upon. We think this position is not tenable.

It is true that the railroad commission possesses only legislative and not judicial powers. We think the delegation of the power to fix rates necessarily carried with it the power on the part of the commission to ascertain and determine the facts upon the existence of which it became the commission's duty to act in the matter. Its decision of such questions is not a judicial determination, and has none of the attributes of a judgment. · The commission's decision of all questions, the determination of which are essential to the performance of any of the duties imposed upon it by the act under consideration, is precisely the same in effect as the determination by a large number of administrative officers of facts necessary to be determined by them in the exercise of the powers and performance of the duties imposed upon them by law. No one has ever contended that such officers had not the power to decide such questions, or

that their decisions, when made, were of a judicial charac-
ter.   Had the legislature, by direct legislative enactment,
undertaken to establish rates or charges for public service
corporations, it would of necessity have been compelled to
determine in the first place what was a reasonable rate, in
order intelligently to exercise its power in that respect.   It
would hardly be contended that the power of the legislature
to enact such legislation would be paralyzed because it
could not determine the reasonableness of the proposed
legislative rate, it being a subject of judicial investigation
and determination.   And if this question could not be
raised against the exercise of legislative power directly, we
think it can not be raised against the exercise of such power
through the medium of the commission, and that this objec-
tion is not well founded.

It is further contended that the act giving to the party
aggrieved by any action or decision of the railroad commis-
sion the right to appeal to the Appellate Court is
10.   ineffective, and affords the railroad company or com-
mon carrier affected no right to have his case judi-
cially heard, for the reason that while the act undertakes to
clothe this court with power to hear and determine the ques-
tion as to the reasonableness of the rate declared by the
railroad commission, and if the rate fixed by the commission
is found to be unreasonable, to fix a reasonable rate, this
court cannot act because the legislature cannot cast upon
it the power to fix rates.   This point may be conceded, and
yet it does not affect the question.   This court would un-
doubtedly have the power to adjudge as unreasonable the
rate fixed by the railroad commission, and to set it aside.
This question was considered and determined adversely to
appellant's contention by this court in the case of *Chicago,
etc., R. Co.* v. *Railroad Com., etc., supra*.   The courts are
open to the railroad company affected, and if the rate fixed
by the commission was unreasonable and confiscatory in
character, it could enjoin its enforcement precisely the same

as it could the same character of rate fixed by direct act of the legislature.

It is finally contended that the railroad commission act (Acts 1905, p. 83, §5405a *et seq.* Burns 1905) is void as being in contravention of the provision in the 14th amendment to the federal Constitution, declaring that no state shall deny to any person within its jurisdiction the equal protection of the law, and of section 23, article 1, of the state Constitution, declaring that the General Assembly shall not grant to any citizen or class of citizens privileges or immuni-. ties which, upon the same terms, shall not equally belong to all citizens, in that the law, so far as it relates to the subject of rates and penalties, exempts interurban railroads from its operation, the contention being that the interurban railroads are engaged in the same business in which the steam roads engage, that they are rivals, competing for the same trade, the only practical difference between them being in the motive power by which their cars are propelled, and that all of the differences between them are insufficient to justify their separation into distinctive classes for any legislative purpose.

We recognize fully the duty of the courts to guard and protect to the fullest extent, against legislative encroachment, the rights of the citizen to equality before the law conferred upon him by the provisions of the federal and state Constitutions. We also recognize that the appellant, though an artificial person, is entitled to the benefit of these provisions. Upon the other hand, it is claimed by the appellee, and not denied by appellant, that the legislature may properly classify subjects of legislation, and enact laws conferring rights and imposing burdens on the created class that are not accorded to or imposed upon those who do not come within the class, according to the legislative view of what is most conducive to the public welfare.

And it is contended by the appellee, and denied by the appellant, that the difference between the steam and the interurban railroads is of such a character as to justify separation into different classes, and the enactment of laws applying to each class separately; so that the decision of the question as to the constitutionality of the law under consideration rests, not upon any dispute about the rule of law proper to apply, nor any dispute regarding the facts, but is solely a question of the application of the admitted rule to the undisputed facts.

The railroad commission act (Acts 1905, *supra*) deals with a number of distinct subjects, one of them being passenger rates; another, and entirely distinct, subject being the classification of freight and freight rates; and another, not entirely distinct from the last subject referred to, being the interchange of freight business between connecting roads, and the proper adjustment of the freight rates on freight passing over more than one company's road. We are here called upon to consider this law as it applies to the subject of freight rates.

It might be that in reference to some of the subjects that are legislated upon in this act its provisions would be obnoxious to the constitutional provisions that have been referred to. For instance, steam railroads and interurban electric roads may stand upon exactly the same footing so far as the passenger traffic is concerned; so much so that any legislative enactment that gave the interurban an advantage over the steam road, or that put the steam road to a disadvantage not imposed upon the interurban in reference to this business, would be an infringement on the constitutional rights of the companies operating the steam roads, and therefore void. And yet in the other provisions of the law, particularly that relating to the subject of freight traffic, and the interchange of freight business over connecting roads, the conditions might be such as not only

to justify, but to require, a classification of the steam roads in one class, and legislating with reference to them upon that subject, and of the electric roads in another class.

12. There is no necessary connection between the legislation in this act upon passenger traffics and on freight traffics. They are entirely separate and distinct. If all that is said in the law in reference to passenger traffics were eliminated, the law would remain entirely intelligible and capable of enforcement, and it is quite manifest that the fact that the legislature could not properly legislate upon passenger traffics in this act would not have changed the purpose of the legislature to enact the other provisions of the law; and where this is true, it is unnecessary for the court to consider the effect of the provisions of the law with reference to passenger traffic, as to whether they are in derogation of the appellant's constitutional rights. The other provisions of the law would remain effective, even though this one fail. *Swartz* v. *Board, etc.* (1902), 158 Ind. 141, and cases cited.

Leaving out of consideration the similarity of the passenger business conducted by the interurban and steam railroads, and considering only, and comparing only, the freight business of the steam roads with the freight business of the interurbans, the question does not seem a difficult one. The interurban road, it is true, is a common carrier of freight, but it is so only in a very limited sense. It holds itself out to carry only light packages, and deliver the same along its own line. It does not undertake to transport freight in car-load quantities, as do the steam roads; it is not equipped to handle those articles which form the most important part of the internal commerce of the State, and which steam roads are specially built and equipped to handle, such as the products of the soil, the mines, the quarries, and the factories; and, while steam roads may also carry light freight, such as is handled by in-

terurban roads, this is a very insignificant part of their business. The great bulk of their business consists in carrying by immense train-loads. They transport in one train hundreds of tons of freight of various kinds, coal, stone, ore, hogs, cattle, sheep, grain, machinery, and manufactured goods of all kinds. This kind of freight traffic is not engaged in by the interurban lines. Their class of freight business is entirely different from that of the steam roads. The steam roads traverse every part of the State. Almost every county in the State, and nearly every town of any considerable size is reached by the steam roads. These roads connect with each other. Their tracks are of the same gauge. They are so laid for the purpose of transferring freight by the car-load, without breaking bulk, from one road to another. The cars and equipment used by the steam roads are built and equipped with the view that they may be transferred, as convenience of the business requires, from one road to another. The character of freight business which is carried on by the steam roads contemplates a joint haul by the roads of a large portion of the freightage, and the necessities of the case require that there should be proper rules and regulations governing not only the freight traffic upon the particular lines of road, but the freight tariffs that shall be charged where freight is carried over different lines of road. All of these things are matters of common knowledge, of which the legislature presumably takes cognizance, and of which the court is bound to know, and the regulation of this vast commerce carried on over these steam roads requires rules that could have no possible relation or application to the kind of freight business conducted over interurban lines, and forms a just and reasonable ground for a legislative classification to rest upon.

We are not to be understood as holding that the provisions of the railroad commission act with reference to the establishment of passenger rates is invalid. What we do

hold is that it is not necessary for this court to consider that question in deciding the question that is presented by the record in this case.

The order made by the railroad commission in this cause is confirmed.

Roby, C. J., absent.