# IN RE NORTHWESTERN INDIANA TELEPHONE COMPANY ET AL.

[No. 25,676. Filed April 14, 1930.]

668

670

*Bruce B. Loring* and *H. H. Loring,* for appellants.

*Emmett F. Branch, John Crumpacker, Goodrich & Emison, Samuel D. Miller, L. L. Bomberger, Frank C. Dailey, William H. Thompson, R. L. Rabb* and *Thomas D. Stevenson,* for appellees.

MYERS, J.—On August 17, 1927, a petition by the Northwestern Indiana Telephone Company to sell, and the Winona Telephone Company and Crown Point Telephone Company to purchase, the capital stock and assets of the Northwestern Indiana Telephone Company, was filed with the Public Service Commission of Indiana. Notice by publication and notice by mail to the mayor and city attorney of Valparaiso, as well as to the mayor and city attorney of other cities where petitioners were operating, was given of the filing and of the time and place when and where a hearing on the petition would be had. At the time so fixed, the petitioners appeared by counsel, and, in opposition to the petition, persons representing the city council, the Chamber of Commerce, and a committee of citizens of the City of Valparaiso, by its attorney, appeared, and evidence was introduced both for and against the petition, which, together with additional evidence of 215 typewritten pages of the record, was before the Lake Circuit Court.

On December 16, 1927, the Commission issued an order denying the petition, from which order petitioners took an appeal to the Lake Circuit Court, where the cause was again tried on the evidence theretofore introduced before the Commission, together with additional evidence on the part of the petitioners and on the part of those designated by the court, city of Valparaiso, et al, as remonstrators. This new and additional evidence was, upon order of the court, certified and transmitted to the Public Service Commission of Indiana for further consideration.

On June 6, 1928, after taking into account the additional evidence heard by the Lake Circuit Court, the Commission reaffirmed its order theretofore made denying the petition, and caused its reasons for so doing to be certified to the Lake Circuit Court. On June 19, that court, on the hearing by it theretofore had, found that the order of the Public Service Commission in denying the petitions was unreasonable and unlawful and not sustained by sufficient evidence, and that the prayer of the petitions should be granted. Judgment followed, ordering the Public Service Commission to approve and authorize the sale and purchase on the terms and stipulations set forth in the petition. On July 17, the city of Valparaiso, the city council of Valparaiso and the Chamber of Commerce of Valparaiso filed a motion for a new trial, assigning as causes insufficient evidence to sustain the finding of the court, and finding of the court contrary to law. This motion was overruled, 60 days given for all bills of exceptions, and 30 days to file bond, all of which was done and approved by the court within the time allowed.

Our attention is first called to a motion to dismiss this appeal, and, in support thereof, eight reasons are assigned. The first three of these reasons may be considered together, as they all refer to the same general

proposition, that the parties prosecuting this appeal were not parties to the proceedings in the court below, and hence have no standing in an appellate tribunal.

It must be kept in mind that this case, in its inception, was, in form, an *ex parte* proceeding (§12767 Burns 1926, Acts 1913 p. 167, §95, as amended, Acts 1925 p. 181) before the Public Service Commission, a purely administrative board created by the State and by legislation given only administrative and ministerial powers. While it may be properly characterized as an administrative arm of the Legislature, yet it has no legislative authority. Art. 4, §1, Indiana Constitution. It may be termed an agent of the State charged with certain administrative duties, which, prior to the enactment of the law creating the Commission, was, by the State, delegated to the state's municipalities or the political subdivisions of the state. *State, ex rel.,* v. *Lewis* (1918), 187 Ind. 564, 569, 120 N. E. 129.

Section 95, *supra,* makes no provision for, nor does it contemplate, the naming of adverse parties to the petition therein authorized to be filed. It does provide that the Commission must withhold its approval of the petition until after a hearing. A reasonable interpretation of the statute requires that the Commission shall fix a place when and where a hearing will be had upon the petition. This done, notice thereof must be given by publication in two newspapers of general circulation in the place where the hearing will take place. Acts 1927 p. 252, §8. The purpose of this notice is to advise the public generally, as well as all persons or corporations which may be affected by the relief asked in such petition, and to give them an opportunity to be heard, to the end that the Commission may be fully advised before acting. There is nothing in the law or rules of the Commission, to our knowledge, ex-

pressly requiring an intervention on the part of an objector, as the practice would ordinarily demand in a court, as a condition precedent to the right of any person or number of persons, or of any corporation, to appear in person or by counsel before the Commission for the purpose of objecting to or of advocating the relief prayed in the petition.

The courts, in reviewing the work of the Commission, must keep in mind that they only have to do with questions calling for judicial interpretation as distinguished from matters administrative. So long as the Commission keeps within the field of regulative powers over the persons or entities over which it has jurisdiction, its orders and actions with reference to such matters must be respected by the courts. The presumption of good faith and valid orders by the Commission must obtain until the contrary is made clearly to appear. *Pittsburgh, etc., R. Co.* v. *Railroad Com., etc.* (1908), 171 Ind. 189, 205, 86 N. E. 328. The work of the Commission is that of regulation between the public and the public utilities operating in this state. In matters over which the Commission has jurisdiction, the public, in the initiative steps, should be treated as one party and the utility as the other. We repeatedly hear the expression that it is the duty of the Commission to represent the public alone. If, by this remark, it is meant that the Commission is organized but for one purpose, that of antagonistic action toward utilities under any and all circumstances, then one of the great purposes of the law, adequate service by the utility at the least cost to the consumer, might be entirely defeated. The theory of the law creating the Commission is that it shall be conscientiously and impartially administered by a body composed of a personnel especially qualified by knowledge, training and experience pertaining to the subject-matter committed to it for award consonant

with reasonable fairness and substantial justice according to legislative mandate, and the circumstances shown relative to its effect in the future on the utility's ability to serve the interest and convenience of the public, the cost and expense to the parties interested being an element for consideration.

A public utility of Indiana, in whatever field engaged, is, by reason of its public quality, pledged to a frugal administration of its business and to furnish adequate service as a matter of public welfare and convenience, for which engagements, if strictly kept, the law forbids competitive service by other public utilities in territory already covered, except between competing companies thus engaged at the time the law became effective, other than the regulation of rates. *Public Service Com.* v. *State, ex rel.* (1916), 184 Ind. 273, 111 N. E. 10.

The Legislature has not prescribed a formal code of procedure to be followed by the Commission in determining the facts as the basis for its order. Hence, the manner in which a question over which it has jurisdiction may be presented to it, as also the method by which it may be advised to correct action, is left almost entirely to the Commission. Formality is not required, nor is it essentially necessary in the foregoing respects to enable the Commission to decide questions, as here, relating to public welfare and public convenience. *Southern R. Co.* v. *Railroad Com., etc.* (1908), 42 Ind. App. 90, 83 N. E. 721.

Petitioners, in the matter here involved, assert that the prosecutors of this appeal have no legal interest in the controversy other than that of the public, represented by the Public Service Commission not a party to this appeal. The Commission, acting in a regulatory capacity as between the public and the utilities here interested, is not a necessary party to an appeal, as we shall presently endeavor to show. It

must judge of its powers and determine the question of its jurisdiction, and, to this extent only, may it interpret statutes by giving them what is known as a "practical construction" as distinguished from a judicial construction, which is strictly a judicial function.

After canvassing the proposal submitted by petitioners, the Commission disapproved it. This action was followed by an appeal by petitioners to the Lake Circuit Court, as authorized by ch. 258, Acts 1927 p. 747, amending §78, Acts 1913 p. 167. But, had the Commission approved petitioners' request, this same act of 1927 gave the right of appeal therefrom to "any person, firm, association, corporation, city or town" adversely affected by, and feeling aggrieved with, the order so made. So that, whether an appeal was taken by the utilities (petitioners) or by others authorized so to do, the case was triable *de novo* and summarily in the court to which the appeal was taken. Acts 1927, *supra*. The circuit or superior court, on appeal, in the chancery sense, is substituted for the Commission in the examination of evidence certified to it and in the hearing of additional evidence and the finding of facts. The ultimate question for determination is whether the order of the Commission is reasonable or within its power to make. If not, in either case, the court may set it aside. Upon the theory that the court had jurisdiction to render a final judgment and to require the Commission to comply therewith, the order of the Commission was set aside as being unreasonable and unlawful, and the Commission ordered to approve the petition. In the absence of a statute to the contrary, and in view of the position occupied by the Commission, the procedure furnished by the act of 1927, *supra*, precludes the thought of the Commission being a necessary party either in the circuit court or on appeal to this court.

The city of Valparaiso and others, which we may,

under the circumstances, treat as the public, prosecuted this appeal which petitioners seek to dismiss for the further reason, sixth cause, that the present controversy is moot, because the Commission had acted on the order of the court, and no appeal was taken within the time allowed for appeals from the Commission. The Lake Circuit Court disposed of the subject-matter of the proceedings as to all the rights of the parties therein before it, and this appeal was taken from that judgment and not from the order of the Commission. Whatever the Commission did in compliance with the court's judgment in no manner estopped the public from appealing from a judgment to which it was a party and with which it was aggrieved.

The seventh ground for dismissal rests upon the claim that the assignment of errors fails to name as appellees the parties in whose favor the judgment herein was rendered. The assignment of errors is addressed to the Supreme Court of Indiana. The title, *ex parte* in form, is the same as the title of the petition filed with the Public Service Commission, and as known and designated in the Lake Circuit Court. True, the names of the petitioners in whose favor judgment was rendered in the court below are not set forth in the body of the complaint, assignment of errors, in this court with that explicitness we would like to see. However, in view of the character of these proceedings and the informality in presenting questions in this class of cases, and the fact that there is enough in the assignment of errors to fully acquaint the court with the questions presented for review, we must regard the assignment of errors sufficient, although the names of the corporations successful below are not specifically named in the complaint here otherwise than in its title.

It is quite elementary that only parties to a final judgment have the right to attack it on appeal. Where the

necessary parties to an appeal are questioned, as here, we look to the entire proceedings as disclosed by the record and to substance rather than form for the answer. We must keep in mind that this case originated before the Public Service Commission, and notice thereof was given, which, by statute, extended to any person, persons or the public, and to any entity interested in or affected by such proceeding without their being made formal parties thereto. The record affirmatively discloses that the parties prosecuting this appeal appeared throughout the entire proceedings, and without objection, actively contested and objected to the proposed division of territory between the purchasing petitioners. The title of the case in form as originally filed was carried forward to the docket of the trial court, and there used to designate this case in the making of formal entries. Under these circumstances we cannot regard the parties prosecuting this appeal as strangers to the record and judgment, which judgment had the effect of foreclosing their rights.

In favor of the eighth cause for dismissing this appeal, it is claimed that the judgment entered below was for costs which were assessed against two of the petitioners, and that an appeal will not lie from the judgment for costs, even though it was against these appellants. We have no fault to find with this general statement, but the judgment entered in the court below had the effect of compelling the Commission to do an act which the prosecutors of this appeal, at all stages of the proceedings, insisted was detrimental to their interests and the public welfare which they represented. Hence, we hold that the parties here appealing are shown to have such an interest in the judgment as will entitle them to prosecute this appeal.

The fourth and fifth grounds for dismissal challenge the constitutionality of §95, *supra*. This section of the

statute was invoked by petitioners, one of them ▮▮▮▮ for an approval of the proposed sale and the other two for approval of authority to purchase the capital stock and assets of the utility operating a telephone company and engaged in furnishing telephone service to the residents and city of Valparaiso and other territory adjacent to that city. The question of the constitutionality of the statute, which the originators of this proceeding recognized and with which they attempted to comply, is first raised in this court. They here claim that §95, *supra,* is inhibited by Art. 3, §1 and Art. 4, §1 of the Constitution of Indiana, in that it prescribes no standard or rule to govern the Commission in determining whether a sale of utility property shall be permitted or denied, but permits the Commission arbitrarily to limit or deny a valuable property right which is an unlawful delegation of legislative power to an administrative board. If the question thus submitted was a proper one in support of a motion to dismiss an appeal, we might very properly answer that the authority conferred upon the Commission is not legislative, but a means created by the Legislature for the purpose of regulating public utilities in the interest of public welfare and convenience. *Vandalia R. Co.* v. *Railroad Com., etc.* (1913), 182 Ind. 382, 101 N. E. 85. Courts cannot and will not go into the field of legislation for the purpose of substituting their judgment for that of the Legislature involving questions of public policy, unless there can be no legitimate suggestion in favor of the law. The reasons that induce legislation and prompt legislative classification of subject-matter affecting all individuals situated and conditioned alike are legislative functions and beyond the power of the courts to control.

A public utility derives its authority to pursue its vocation from the State. The acceptor of such right is

always subject to reasonable rules and regulations. It is a matter of common knowledge that no hard and fast rule purposing supervision or regulation over owners and operators of property devoted to public use can be promulgated by the Legislature or by any other authority that will apply alike to all cases and conditions that will certainly arise, and which do arise, in the various localities of the state. Hence, as to all matters over which the Commission has jurisdiction, the Legislature has given it necessarily a wide discretion. Section 95 does not give the Commission power to arbitrarily prohibit the sale or purchase of utility property, nor does it or any other provision of the law authorize a utility to arbitrarily conduct its affairs regardless of the public interest wholly dependent upon the utility serving the territory. But, by this enactment, the Legislature has vested it with authority, subject to review by the courts, to supervise or regulate the terms of sale, in so far only as they affect the public. "The owner of such property must submit to be controlled by the public to the extent of its interest as long as such public use is maintained." *Utilities Com.* v. *Bethany Tel. Assn.* (1915), 270 Ill. 183, 110 N. E. 334, Ann. Cas. 1917B 495. Regulation and legislation are not synonymous terms. As applied to the statute in question, regulation means a reasonable supervision by a legislative authorized agency over the owner of property devoted to a public use, or in case the police power of the state may be invoked.

Further, in support of the motion to dismiss, it is asserted, in substance, that, the statute being unconstitutional, neither the Public Service Commission nor the courts have jurisdiction of the subject-matter in controversy. It is true, jurisdiction over the subject-matter of an action cannot be conferred on the Commission or on the courts by consent, and it may

be questioned at any time during the progress of the proceeding. *Patterson, Admx.*, v. *Scottish American Mortgage Co.* (1886), 107 Ind. 497, 8 N. E. 554; *Lowery* v. *State Life Ins. Co.* (1899), 153 Ind. 100, 54 N. E. 442; *Doctor* v. *Hartman* (1881), 74 Ind. 221.

But, in the instant case, the statute, §95, *supra*, gave the Commission original jurisdiction of the matter presented by the petition, and §78 as amended, ▮ *supra*, conferred jurisdiction on the circuit court in case of an appeal. Section 83, Acts 1913 p. 167, §12754 Burns 1926 allows an appeal from the judgment of the circuit court to this court.

Petitioners sought an approval by the Commission of the sale and purchase of property devoted to a public use. They here attempt to raise the question of ▮ jurisdiction by challenging the constitutionality of the statute under which these proceedings were begun. As we have seen, the Legislature has expressly given the Commission and the courts jurisdiction of the matter involved in the petition, and inasmuch as the question of jurisdiction as here presented depends upon the invalidity of a statute not in any manner questioned in the court below, where all the relief asked was obtained, they will not be permitted to here question its constitutionality for the first time. *Drake* v. *State* (1929), *ante* 235, 165 N. E. 757; *Simmons* v. *Simmons* (1917), 186 Ind. 575, 116 N. E. 49; *Crabb* v. *Orth* (1892), 133 Ind. 11, 32 N. E. 711; *Stoy* v. *Indiana, etc., Power Co.* (1906), 166 Ind. 316, 76 N. E. 1057; Elliot's Appellate Procedure §570; *Phelps* v. *Board of Appeals* (1927), 325 Ill. 625, 156 N. E. 826; *Dodge* v. *Cornelius* (1901), 168 N. Y. 242, 61 N. E. 244; *In re Hand Street* (1889), 55 Hun. (N. Y.) 132, 8 N. Y. Supp. 610; *Hart* v. *Folsom* (1899), 70 N. H. 213, 47 Atl. 603.

The motion to dismiss is overruled.

On the merits of this case, we are first met with the

proposition that amended §78, *supra*, violates Art. 3, §1, Constitution of Indiana, in that: (1) It ▮ attempts to confer on the judicial department of the government a legislative function; (2) it provides for the substitution of a judicial order for an administrative order; (3) it permits the court to substitute its discretion for that of the Commission; (4) it gives the courts power to control the discretion of the Commission. By amended §78, *supra*, (Acts 1927 p. 747) "any person, firm . . . or public utility adversely affected by and feeling aggrieved with any decision, ruling, order, . . . of the public service commission may appeal to the circuit or superior court of any county in which such decision, ruling, order, . . . is operative." The secretary of the Commission is required to file with the court a complete transcript of all of the proceedings, including the evidence before the Commission. The court to which the appeal is taken tries the case *de novo* upon the transcript furnished by the Commission, and any other evidence which may be introduced. If there is evidence before the court and not heard by the Commission, the court is required, before rendering judgment, to transmit a copy of such evidence to the Commission for its consideration. If the Commission refuses to change, alter or amend its former order as the court may deem just and equitable, "then the court may make a final determination of the proceeding appealed from and cause the same to be executed, or may send the same back to said public service commission with an order how to proceed and may require such public service commission to comply with the final determination made by the court in the matter of said proceeding and the court may adjudge who may pay the costs of such appeal."

Evidently this statute concerning the powers of the court was patterned after §5976 *et seq.* Burns 1926, concerning appeals from decisions of county commissioners,

but it must be remembered that county commissioners, in many matters, act judicially, and from such decisions there is a right of appeal, unless such right is denied expressly, or by necessary implication by the statute creating the duty. On the other hand there is no right of appeal in matters calling for administrative, ministerial or discretionary action without express statutory authority. *Board, etc.,* v. *Davis* (1894), 136 Ind. 503, 36 N. E. 141, 22 L. R. A. 515; *Potts* v. *Bennett* (1895), 140 Ind. 71, 39 N. E. 518; *Board, etc.,* v. *Beaver* (1901), 156 Ind. 450, 60 N. E. 150; *Board, etc.,* v. *Spangler* (1902), 159 Ind. 575, 65 N. E. 743; *Ross* v. *Becker* (1907), 169 Ind. 166, 81 N. E. 478; *City of Indianapolis* v. *Hawkins* (1913), 180 Ind. 382, 103 N. E. 10.

The real question before the Public Service Commission, as well as on appeal to the circuit court, was not the right of one telephone company to sell its stock and assets to two other companies engaged in the same business in other territory, but it involved the question of service to be rendered the public in the future by the purchasing companies under the proposed division of territory between them. The stipulation on that subject gave Winona the city of Valparaiso and the town of Kouts in Porter County and the territory south of an arbitrary line three and one-half miles north, and east of a line three and one-half miles west of the city of Valparaiso, and to the Crown Point Company the city of Hobart in Lake County, Chesterton and Wheeler in Porter County, and all territory north and west of the above-mentioned three and one-half mile lines, as also the toll lines from Valparaiso to Chesterton and from Valparaiso to Hobart, all of which territory was then being served by the Northwestern Indiana Telephone Company.

At this point, it may be instructive to call attention to the language used in the case of *Prentiss* v. *Atlantic*

*Coast Line Co.* (1908), 211 U. S. 210, 226, 29 Sup. Ct. 67, 53 L. Ed. 150, where it is said: "A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end. Legislation on the other hand looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power."

By §95, *supra*, the Legislature undertook to supervise the sale of public utility property in the interest of the public by providing a means for the investigation of the proposed sale and purchase in advance of its consummation. Such investigation necessarily has to do with the effect in the future on public convenience and necessity. If, from such investigation, new or additional reasonable rules, regulatory in character, in the discretion of the Commission seemed advisable, it was authorized to make them. One of the reasons for this statute, and there may be many more, is to protect the public in the use of utility service with as little inconvenience and cost as may be essentially necessary to furnish the same.

The jurisdiction of the Legislature, like that of the courts, is limited by the Constitution, and neither can rightfully enter upon the field occupied by the other. As we have seen, the Legislature has authorized an appeal to the courts from an administrative order of the Commission. By this right of appeal, it was the purpose of the Legislature to permit the courts to pass upon the reasonableness of orders or actions of the Commission, and apparently discretionary acts of the Commission. The making of orders or decisions upon questions within the jurisdiction of the Commission requires more or less the exercise of administrative discretion, a review of which it seems the Legislature has

undertaken to pass to the courts with the power to control such discretion. The reasonableness of administrative discretion incorporated into rules and regulations as applied to certain subjects may be submitted to the courts for approval or disapproval, but further than that the Legislature cannot go.

In the case at bar, the trial court found that the order of the Public Service Commission in denying the petition was "unreasonable and unlawful and not sustained by sufficient evidence, and the prayer of said petition should be granted." The judgment was that the petition be granted upon the terms and conditions set out in the petition, and the Public Service Commission is "ordered and directed to approve and authorize the same." Section 78, *supra*, is the only authority for the above judgment, and the constitutionality of that statute is sought to be challenged as one of the causes in the motion for a new trial on the theory that the finding is contrary to law.

As we are at present advised, §78, *supra*, is not unconstitutional in its entirety, but only in so far as it undertakes to empower courts to control administrative or legislative discretion, or clothe the courts with legislative powers over the Commission. Hence, that part of the finding that "the prayer of the petition should be granted," and the judgment ordering the Commission to approve the petition, are matters involving legislative and not judicial functions. In this case, a motion to modify the judgment would have been the correct practice, but, since it was charged in the motion for a new trial that the law was invalid and a ruling thereon had, we are disposed to treat the question of the constitutionality of the act as presented.

Other causes for a new trial—insufficient evidence and finding contrary to law—are not mentioned in the brief of those prosecuting this appeal under the heading

"Points and Authorities." However, under the heading of "Argument," they refer to the evidence generally, but do not undertake to specifically point out wherein the evidence is insufficient. Questions on the insufficiency of the evidence are therefore waived.

In conclusion, we hold that all of that part of the judgment of the court below wherein the court substituted its discretion for that of the Commission and ordered the Commission to adopt it was without the power of the court, and, to that extent, the judgment below was erroneous.

Judgment reversed, with instructions to the trial court to enter judgment in accordance with this opinion.