Ralph L. WILFONG, Appellant,

v.

INDIANA GAS CO., INC. et al., Appellees.

No. 2–676–A–227.

Court of Appeals of Indiana, Fourth District.

Jan. 29, 1980.

Willis K. Kunz, Thomas L. Mattix, Kunz & Kunz, Robert D. Morgan, Michael B. Cracraft, Smith, Morgan & Ryan, Indianapolis, Douglas Fresh, Jeffersonville, Thomas R. McCully, Stuart, Branigin, Ricks & Schilling, Lafayette, Fred W. Carter, President Citizens Savings & Loan Assn., Frankfort, for appellant.

Howard J. Cofield, Jon D. Noland, Barnes, Hickam, Pantzer & Boyd, Berton W. O'Bryan, Sparrenberger, Duvall, Tabbert & Lalley, John D. Forbes, Rocap, Rocap, Reese & Young, Michael J. Huston, Fred E. Schlegel, Baker & Daniels, Indianapolis, James R. Earnshaw, Harding & Henthorn, Crawfordsville, Ken A. Elmendorf, Plainfield, Thomas M. Gallmeyer, Rothberg, Gallmeyer, Fruechtenicht & Logan, Fort Wayne, for appellees.

YOUNG, Judge.

This is an appeal from the Public Service Commission. We affirm.

The Indiana Gas Co., appellee, initiated this proceeding by requesting a tariff revision from the commission. The gas company asserted that the revision was needed due to a reduction in gas supplies. Ralph L. Wilfong, a real estate developer, participated in the proceedings before the commission. Ultimately the commission authorized the gas company not to provide gas service for new applicants. Wilfong was adversely affected by this decision. For all practical purposes he was denied a supply of gas for the houses he proposed to build. He appeals.

■ On many occasions the Supreme Court has set forth the rules governing review of administrative decision. We summarize them. To the extent that Wilfong challenges the decision for lack of support in the evidence, we cannot disturb that decision so long as it is supported by substantial evidence. *Public Serv. Comm'n v. City of Indianapolis,* (1956) 235 Ind. 70, 131 N.E.2d 308, 313; *Terre Haute Gas Corp. v. Johnson,* (1942) 221 Ind. 499, 45 N.E.2d 484, 488, *reh. den.,* 48 N.E.2d 455. *Warren v. Indiana Tel. Co.,* (1940) 217 Ind. 93, 26 N.E.2d 399, 409. We may presume the decision is supported by sufficient evidence. *New York Cent. R.R. v. Public Serv. Comm'n,* (1937) 212 Ind. 329, 7 N.E.2d 957, 958. Wilfong has the burden to show that the decision is not supported by sufficient evidence. *New York Cent. R.R. v. Public Serv. Comm'n, supra.* We are bound by the agency's findings of fact if they are supported by substantial evidence. "Insofar as the findings of fact by an administrative board are concerned, the reviewing court is bound by them, if they are supported by the evidence." *City of Mishawaka v. Stewart,* (1974) 261 Ind. 670, 310 N.E.2d 65, 69. We consider only the evidence favorable to the decision. *Soetje & Arnold, Inc. v. Basney,* (1941) 218 Ind. 538, 34 N.E.2d 26, 27. We cannot reweigh the evidence. *C.T.S. Corp. v. Schoulton,* (1978) Ind., 383 N.E.2d 293, 296; *Indiana Al. Bev. Comm'n v. Lamb,* (1971) 256 Ind. 65, 267 N.E.2d 161, 163.

■ Furthermore we may defer to the expertise of the agency in finding the facts and in applying the law to the facts. "We cannot substitute our judgment for that of the board in deciding matters which call upon the board to exercise its expert knowledge and skill if there is any substantial evidence to support the board's conclusions." *Board of Med. Regis. & Exam. v. Armington,* (1961) 242 Ind. 236, 178 N.E.2d 741, 743. The Supreme Court has said that finding facts and applying the law to those facts is the "gravamen" of the administrative function. *Gayheart v. Newnam Foundry Co.,* (1979) Ind., 393 N.E.2d 163, 166. We turn to the issues.

### I.

The first issue is one of law. Wilfong tersely argues that the commission has no power to deny gas service. "The Public Service Commission of Indiana does not have power or authority to approve rules and regulations which deny gas service when such is reasonably demanded." Appellant's Brief 19. Wilfong's authority is scant. He principally relies upon some general language found in *Public Serv. Comm'n v. Panhandle Eastern Pipeline Co.,* (1947)

224 Ind. 662, 71 N.E.2d 117, 127. The issue and context of that case are foreign to the one before us. We must look elsewhere for an answer.

■ The commission, of course, has only that power bestowed by statute. *General Tel. Co. of Ind. v. Public Serv. Comm'n,* (1958) 238 Ind. 646, 150 N.E.2d 891, 894, *reh. den.,* 154 N.E.2d 372; *Chicago & E.I.R.R. v. Public Serv. Comm'n,* (1943) 221 Ind. 592, 49 N.E.2d 341, 341. It also is true that a statute should be construed to accomplish the end for which it was enacted. *Pollock v. Studebaker Corp.,* (1952) 230 Ind. 622, 105 N.E.2d 513, 514; *Financial Aid Corp. v. Wallace,* (1939) 216 Ind. 114, 23 N.E.2d 472, 477.

■ We believe that the commission's decision is authorized by IC 1971, 8–1–2–69 (Burns Code Ed.). This provision is a general grant of authority to the commission to regulate utility service. The provision states:

"Whenever, upon investigation made under the provisions of this act, the commission shall find any regulations, measurements, practices, acts or service to be unjust, unreasonable, unwholesome, unsanitary, unsafe, insufficient, preferential, unjustly discriminatory or otherwise in violation of any of the provisions of this act; or shall find that any service is inadequate or that any service which can be reasonably demanded cannot be obtained, the commission shall determine and declare and by order fix just and reasonable measurements, regulations, acts, practices or service to be furnished, imposed, observed and followed in the future in lieu of those found to be unjust, unreasonable, unwholesome, unsanitary, unsafe, insufficient, preferential, unjustly discriminatory, inadequate, or otherwise in violation of this act, as the case may be, and shall make such other order respecting such measurement, regulation, act, practice or service as shall be just and reasonable."

The general language of this provision is sufficient to permit the commission to authorize the gas company not to provide gas service to new customers. We also note that as a practical matter it is important that the commission possess the power to regulate gas service in times of insufficient supply. For us to refuse to acknowledge that the commission has this power would be to charge the legislature with shortsightedness.

Thus, we reject Wilfong's general proposition that the commission lacked the statutory power to render its decision.

II.

The second issue is also stated as a general proposition of law. Wilfong argues that the "Public Service Commission does not have power or authority to approve rules and regulations which abrogate or impair existing contract rights between a public utility and a private individual in areas not related to rates." Appellant's Brief 20.

Wilfong points out that he had entered into a "main extension agreement" with the gas company. He argues that these contracts obligated the gas company to provide gas service. Building upon this, he then argues that the commission's decision which permitted the company to refuse to provide gas service impaired his contracts. Upon this crucial point Wilfong cites no authority. We therefore will give this issue brief treatment. For the sake of argument we assume *arguendo* that the "main extension agreements" obligated the company to provide gas service.

■ At least since the time of *Home Bldg. & Loan Ass'n v. Blaisdell,* (1934) 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413, it has been accepted law that the state may act to protect the welfare of the people "notwithstanding interference with contracts." 290 U.S. 437, 54 S.Ct. 231. Contracts are subject to the police power of the state. *Home Bldg. & Loan Ass'n v. Blaisdell, supra.* In *City of Akron v. Public Utils. Comm'n,* (1948) 149 Ohio St. 347, 78 N.E.2d 890, the court held that at a time of a natural gas shortage the commission had power to adopt rules which suspended certain contract terms.

In light of this authority we resolve this issue against Wilfong.

### III.

Wilfong argues that the commission's decision "is not fair, just and reasonable and in the public interest as found by the Public Service Commission." Appellant's Brief 24. We disagree.

Wilfong does not seriously dispute that at the time material to the commission's decision there was an actual or anticipated gas shortage. Implicit in Wilfong's argument is the concession that the use of gas would need to be curtailed. Wilfong, however, argues that other users of gas should have been required to curtail their consumption in advance of any curtailment by Wilfong. He takes particular aim at industrial users. Wilfong's contention is that his proposed use of the gas for residential purposes has priority over use for industrial purposes. This argument is addressed to the following portion of the commission's decision:

"7. *Approval of New Tariff.* Based on the facts heretofore found by the Commission, we find that the new tariff and Administrative Guidelines proposed by Indiana Gas, and particularly Rule 27, B, thereof, are fair, just and reasonable and are in the public interest and should be approved. Recognizing the desirability to Petitioner [Wilfong] and others similarly situated of having available continued gas service for space heating and/or cooling purposes and the possible financial impact of discontinuing new service for such purposes, these consequences are also true for *existing* industrial customers of Indiana Gas who, despite service contracts, are unable to secure additional gas service and face increasing interruptions and curtailments. The present, firm industrial customers of Indiana Gas have an existing investment in gas-burning equipment and a need for gas in their manufacturing operations. Curtailment of these customers, at the least, will create economic waste as a result of the necessity to convert to an alternate fuel. Moreover, such curtailments may result in unemployment or actual plant closings. As shown by Indiana Gas Company, Inc. Exhibit No. 7, a difference in curtailment of from 10 to 25% will have a drastic effect on the number of employees furloughed by certain firm industrial customers. On the other hand, other energy sources are available for new residential or small commercial customers. Electricity, oil or propane may be used as an initial energy source, thus avoiding any costs of conversion. In these circumstances, the public interest requires that future supplies of gas be husbanded for Indiana Gas's present firm customers by stopping customer growth as proposed." (emphasis in original)

The commission's decision reflects a choice between two competing demands for gas. On the one hand, the commission could have authorized the gas company to curtail the supply of gas to *existing* industrial users. On the other hand the commission could conserve the gas supply by authorizing the gas company not to supply gas to *new* residences such as those proposed to be constructed by Wilfong. In making this choice the commission is required to protect the interests of the entire state. The commission cannot be found at fault for refusing to tailor its decision to the benefit of one particular real estate developer. The commission decided as it did because it believed the public welfare was better advanced by supplying *existing* industrial users rather than *new* residential users. This decision was reached, in part, because the economic loss occasioned by converting industrial users to an alternate fuel was viewed as more expensive and hence less desirable than constructing *new* residences with an "initial energy source" other than gas. This decision was reasonable.

Wilfong complains that this decision imposes upon him a substantial additional expense. This is not sufficient to overturn the decision. The very nature of our economy dictates that when supply is diminishing an additional expense will have to be borne by some. The commission's goal is accomplished in part by trying to minimize that

additional expense. *In re Northwestern Ind. Tel. Co.*, (1930) 201 Ind. 667, 171 N.E. 65, 68. Here, the goal is obtained. This is because the economic expense flowing from the curtailment of *new* residential use is less than that economic loss which would be occasioned by converting the *existing* industrial users. There is no argument in Wilfong's brief which demonstrates on the evidence that his personal economic stake outweighs the financial loss which otherwise would befall the industrial users, their employees, and the remainder of the state.

Wilfong points to case law which requires utilities to provide service to those who demand it. Given an adequate supply of gas, this may be true. However, Wilfong cites no authority which requires a utility somehow to supply service to all who demand it even though the supply of gas is inadequate. *State ex rel. Wood v. Consumers' Gas Trust Co.*, (1901) 157 Ind. 345, 61 N.E. 674, is cited by Wilfong to support an argument that even in times of insufficient supply a utility must serve all consumers even though existing customers would be inconvenienced. Since the date of that decision the legislature has enacted laws which pervasively regulate utilities. These laws displace the common law foundation of *State ex rel. Wood v. Consumers' Gas Trust Co.* Current law permits the commission to exercise discretion. IC 1971, 8–1–2–69, *supra*. "The Public Service Commission is vested with discretion in requiring service." *Chicago, M., St. P. & Pac. R.R. v. Public Serv. Comm'n*, (1943) 221 Ind. 1, 46 N.E.2d 230, 231. While this statement was directed at rail service, we see no reason why it would lack application to gas service. The Supreme Court also stated this viewpoint in *In re Northwestern Ind. Tel. Co.*, (1930) 201 Ind. 667, 171 N.E. 65, 69:

> "It is a matter of common knowledge that no hard and fast rule purposing supervision or regulation over owners and operators of property devoted to public use can be promulgated by the Legislature or by any other authority that will apply alike to all cases and conditions that will certainly arise, and which do arise, in the various localities of the state.

Hence, as to all matters over which the commission has jurisdiction, the Legislature has given it necessarily a wide discretion."

Wilfong argues that the commission's decision contravenes the policy of the Federal Power Commission. Accepting this contention *arguendo*, Wilfong however concedes that FPC "policy" is not binding upon the commission insofar as the merits of this case are concerned.

The greater portion of Wilfong's argument invites us to examine items of evidence adverse to the commission's decision. We cannot reweigh evidence. *C.T.S. Corp. v. Schoulton*, (1978) Ind., 383 N.E.2d 293, 296; *Indiana Al. Bev. Comm'n v. Lamb*, (1971) 256 Ind. 65, 267 N.E.2d 161, 163. We must disregard all evidence which is unfavorable to the board's decision. We can consider only the favorable evidence. *Soetje & Arnold, Inc. v. Basney*, (1941) 218 Ind. 538, 34 N.E.2d 26, 27.

To the extent that Wilfong questions whether this aspect of the decision is based upon substantial evidence, he defeats our appellate review. This is because his brief does not adequately disclose the evidence favorable to the decision. He did not substantially set out the favorable evidence in his brief nor apply his argument thereto. Consequently questions depending on the evidence need not be considered by us. *Walters v. State*, (1979) Ind., 394 N.E.2d 154, 156 (waiver); *Hill v. State*, (1977) Ind., 370 N.E.2d 889, 891 (waiver). "[Appellants] refer to the evidence generally, but do not undertake to specifically point out wherein the evidence is insufficient. Questions on the insufficiency of the evidence are therefore waived." *In re Northwestern Ind. Tel. Co.*, (1930) 201 Ind. 667, 171 N.E. 65, 71.

Finally, we note that in determining whether the decision is "fair, just and reasonable" we are not at liberty to substitute our judgment for that of the commission. *Southern Ind. Gas & Elec. Co. v. Cornelison*, (1978) Ind., 378 N.E.2d 845, 846–47. "We cannot substitute our judgment for that of the board in deciding matters

which call upon the board to exercise its expert knowledge and skill if there is any substantial evidence to support the board's conclusions." *Board of Med. Regis. & Exam. v. Armington,* (1961) 242 Ind. 436, 178 N.E.2d 741, 743.

There is no error.

## IV.

We next are confronted with the contention that the decision is not supported by substantial evidence.

■ Again, Wilfong devotes the greater portion of his argument to that evidence which detracts from the commission's decision. While this approach is understandable, we repeat that it is not compatible with our standard of review. We are required to view the evidence in a light favorable to the decision. A challenge to the evidentiary foundation of the decision might be more successful if the appellant would argue that even considering only the evidence *favorable* to the decision, such does not amount to substantial evidence. We will not undertake the burden to examine the record independently to extract that evidence favorable to the decision. As we stated earlier, when the evidence is not substantially set out in the brief, questions depending thereon need not be considered by us. *Walters v. State,* (1979) Ind., 394 N.E.2d 154, 156; *Hill v. State,* (1977) Ind., 370 N.E.2d 889, 891; *In re Northwestern Ind. Tel. Co.,* (1930) 201 Ind. 667, 171 N.E. 65, 71. We therefore find no error.

## V.

■ The final argument is that the commission's decision amounts to a "taking" of Wilfong's property contrary to the protection of property afforded by the Indiana and United States Constitutions. Wilfong directs us to *Home Bldg. & Loan Ass'n v. Blaisdell,* (1934) 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413. He tries to distinguish that case. He asserts that the state's police power is no justification for the commission's decision where that decision is not reasonable or appropriate. We heretofore have held that the decision was reasonable and appropriate. Thus Wilfong's distinction fails.

A major part of Wilfong's argument is that he was denied due process of law. The denial allegedly resulted from the fact that the gas company entered into main extension agreements even though it supposedly knew that no gas would be available. Wilfong acknowledges the need for "state action" in order to invoke the Due Process Clause. However, he cites no authority that this particular conduct by a utility is "state action" and is therefore required to comport with due process. This issue is waived for lack of sufficient authority or argument. *Kennedy v. State,* (1979) Ind., 393 N.E.2d 139, 143; *Gee v. State,* (1979) Ind., 389 N.E.2d 303, 307.

Affirmed.

MILLER, P. J., and CHIPMAN, J., concur.