GREENWOOD PROFESSIONAL PARK,
an Indiana limited partnership,
Appellant (Petitioner Below),

v.

PUBLIC SERVICE COMMISSION OF
INDIANA, and Public Service Company
of Indiana, Inc., Appellees (Respondents Below).

No. 2–1084A313.

Court of Appeals of Indiana,
Third District.

Jan. 15, 1986.

James N. Scahill, Raymond Good, Johnson & Weaver, Indianapolis, for appellant.

Lana M. Kruse, Plainfield, for appellee Public Service Co. of Indiana, Inc.

HOFFMAN, Judge.

Appellant Greenwood Professional Park, a limited partnership, (Greenwood or petitioner) appeals an order of the Public Service Commission denying Greenwood's request for master metering of a multi-unit building in the professional park. Appellant alleges the decision of the Commission is erroneous as it is not supported by adequate findings of fact based on substantial evidence.

This cause arose pursuant to 170 IAC 4-1.5-2. In 1978 Congress enacted the Public Utility Regulatory Policies Act (PURPA), 16 U.S.C. §§ 2601-45. Pursuant to PURPA, the state regulatory agencies for utilities were required to consider and adopt or reject various standards as set forth in 16 U.S.C. §§ 2621-25, which standards were to conserve energy, promote efficient use of facilities and resources by the utility and to promote equitable rates to consumers of electricity. 16 U.S.C. § 2611. 16 U.S.C. § 2623(b)(1) establishes the standard of prohibiting, with exceptions, the use of master metering in new buildings. Pursuant to this federal legislation, 170 IAC 4-1.5-2 was enacted which provides:

> "Master metering of new multi-unit structures
> Sec. 2. General Prohibition of Master Metering of New Multi Unit Buildings and Exceptions. All electricity delivered to a new building at which units of such premises are separately rented, leased or owned, shall be sold by the electric utility on the basis of individual meter measurement for each such occupancy unit, except for electricity used in hotels, motels and other similar transient lodging, or where the service applicant establishes in writing furnished to the utility before commencement of construction of the new building that costs of purchasing and installing separate meters in such building exceed the long run benefits of individual metering of units and would not substantially serve to meet any of the three objectives of the Act."

Greenwood had begun construction of the buildings in its professional park in 1976. The first buildings in the complex were completed in 1976. A second group of buildings was begun in 1978 with one building completed in 1979 and another building, the one at issue here, begun in April 1983 and incomplete at the time of hearing. All the buildings have multiple units. In the first group of buildings completed, each building is equipped with a master meter which services all units in the building. The building completed in 1979 was also a multi-unit structure with a master meter servicing that building and equipped to be expanded to service the building begun in 1983. However, the last building was not begun until after the effective date of 170 IAC 4-1.5-2 which prohibits, with exceptions, master metering. Petitioner did not request master metering for the building until September 1983. The request was denied and a hearing ensued resulting in an order finding the petitioner not within the exception and therefore refusing master metering. Petitioner requested reconsideration of the matter which was denied.

The standard of review for a ruling of the Commission is set out in IND. CODE § 8-1-3-1:

> "An assignment of errors that the decision, ruling or order of the Commission is contrary to law shall be sufficient to present both the sufficiency of the facts found to sustain the decision, ruling or order, and the sufficiency of the evidence

to sustain the finding of facts upon which it was rendered."

To implement the statutory standard of review, the Commission is required to make specific findings on all factual determinations material to the ultimate conclusions. On review, inquiry concerns whether the ultimate conclusions may reasonably be inferred from the findings of fact and whether there is substantial evidence to support the findings of basic facts. *Citizens Action Coalition v. Public Serv. Co.* (1983), Ind.App., 450 N.E.2d 98, 102, *reh. denied.* In reviewing the Commission decision, the Court cannot reweigh the evidence nor substitute its judgment for that of the Commission. *Wilfong v. Indiana Gas Co., Inc.* (1980), Ind.App., 399 N.E.2d 788, 790. The decision of the Commission will be set aside only where the review clearly indicates the agency decision lacks a reasonably sound basis of evidentiary support. *L.S. Ayres & Co. et al. v. I. P. & L. Co.* (1976), 169 Ind.App. 652, 351 N.E.2d 814, 822–823, *trans. denied.*

Here, petitioner has conceded the Commission made the findings necessary to the ultimate conclusions. Therefore the only issue is whether those findings are supported by substantial evidence.

■ The Commission found petitioner had failed to establish the economic cost of individual metering exceeds the long term benefits of individual metering. Petitioner argues this finding is not supported by the evidence since Public Service Company of Indiana (PSI), as respondent, did not offer any evidence of the economic benefits of individual metering. PSI was not required to present such evidence. Whether or not individual metering is economically beneficial over the long run was determined when 170 IAC 4–1.5–2 was enacted. Evidence of the economic benefits was considered at the hearings before enactment. The issue now is whether, given the preference for individual metering as established by 170 IAC 4–1.5–2, petitioner's situation results in the economic costs of individual metering exceeding the long term benefits and prevents the advancement of the objec-

tives of the act by use of individual metering. 170 IAC 4–1.5–2. The burden is on petitioner to thus establish itself within the exception to the individual metering mandate.

As to the element of costs exceeding benefits, a review of the evidence reveals that petitioner presented the testimony of Dr. John Mahan, the general partner of Greenwood Professional Park. Mahan offered evidence of a $1,360.10 estimate for wiring and metering the units of the building at issue. It was further established by PSI that the cost to PSI to install the individual meters would range from $358.76 to $944.67. In addition Mahan gave his opinion as to other areas of increased costs without presenting further evidence of same: increased PSI costs in maintaining, reading and billing for multiple meters; increased consumer costs due to less efficient operation of heating and cooling systems due to individual maintenance rather than maintenance by petitioner; additional purchase and installation costs for water heaters to replace the central water heater; and the lost dual value of the existing master meter.

Also, Mahan opined that a benefit of individual metering, lower energy usage, would not be advanced in this particular office complex since the units rented by doctors and laboratories required constant temperature; the offices were already equipped with set back thermostats to vary the temperature to the extent possible; the partnership would no longer be responsible for the utility bills and management personnel would not enter offices to turn out lights; and Greenwood would not continue to construct the facilities in the same energy efficient manner if individual metering was required.

■ This evidence was found insufficient to establish the costs of the individual metering exceeded the benefits. This decision is supported by the evidence. The evidence presented is largely opinion evidence of one admittedly not an expert and without technical knowledge. The Commission found the evidence uncompelling under these cir-

cumstances, which finding requires a weighing of the evidence and judging of the credibility of witnesses which this Court will not reassess.

In addition, the Commission found the population of the complex was not now nor likely to be in the future totally immune to the benefits of price signals of individual metering. Not all the offices were of a nature requiring patients to disrobe and thus immune to price signals, and there was no evidence all the offices would be so in the future. In fact, the doctors occupying the building in question were, at the time of the hearing, a periodontist and a dentist. Also, Mahan admitted the receipt of an individual bill for electricity would send a price signal even to doctors. While, the tenants who were also partners in Greenwood, which was responsible for the utility payments under master metering, were price sensitive even with master metering, this group only included 50% of the tenants and there was no evidence of potential expansion into the rest of the tenant population, and there was no indication these partner-tenants would not continue to be price sensitive under individual metering. These findings were supported by the testimony of Mahan himself, and established sufficient evidence to support the decision.

■ Petitioner also argues the Commission applies an incorrect standard to its findings. Petitioner asserts that pursuant to the requirements of 170 IAC 4–1.5–2, petitioner must only show that master metering is equal to or better than individual metering to carry the burden to establish itself within the individual metering exemption.

The Commission found petitioner's evidence did "not indicate individual metering would not substantially serve to meet any of the three objectives of PURPA." This wording tracks that of 170 IAC 4–.15–2. In other references, the Commission found that individual metering "would not defeat the PURPA objective...." While the language does not track the regulation, form will not be exalted over substance if, in fact, the proper standard has been applied. Power to adopt the regulation in question is given the Commission in IND.CODE § 8–1–2–69. Having adopted the regulation in compliance with IND.CODE § 4–22–2–1 *et seq.* establishing the procedure for adoption of administrative rules, the regulation has the force and effect of law. *Dept. of Financial Inst. v. Johnson Chev. Co.* (1950), 228 Ind. 397, 404, 92 N.E.2d 714. In interpreting such an enactment, words are given their ordinary meaning unless a different meaning is clearly manifest, and the intent of the legislative body in promulgating the rule is to be given effect if possible. *Park 100 Dev. v. Indiana Dept. of State Rev.* (1981), Ind., 429 N.E.2d 220.

Applying these rules to the present issue, the standard as set out in 170 IAC 4–1.5–2 requires a showing that none of the objectives of PURPA would be advanced by the use of individual metering of the units involved. Thus a showing of the merits of master metering is insufficient to place the petitioner within the exemption.

■ The first objective of PURPA is to encourage conservation of energy. Mahan presented his opinion, while admitting his lack of technical knowledge, that usage would increase with individual metering. However, the testimony from Mahan was inconsistent and there was no further evidence to support the allegation of a usage increase. In addition, as indicated above, Mahan admitted on cross-examination that even the tenants in this office complex would be sensitive to individual billing as a price signal. Also, there was no evidence before the Commission that the individual tenants would not be as able and efficient as management in maintaining their equipment in a cost efficient manner. The Commission found the evidence insufficient to indicate that individual metering would not substantially serve to conserve energy, and the Court will not reweigh the evidence nor reassess the credibility of the witness necessary to that decision.

The second objective of PURPA is efficient use of facilities and resources. As the Commission found, there was no techni-

cal evidence presented to establish the lack of efficient use due to individual metering. At best, Mahan presented his opinion as to the fact that numerous, smaller appliances would be less efficient than larger, single appliances. There being no real evidence, this decision again involved weighing the facts and judging credibility and we will not reassess either.

Finally the Commission found there was not sufficient evidence to establish that the objective of equitable rates to consumers would not be served by individual metering. There was no evidence presented to establish that under individual metering each tenant-consumer would not be paying for his own usage nor object to paying for his own usage. Therefore the finding is affirmed.

Having found substantial evidence to support the Commission's order, the order is affirmed.

GARRARD and SHIELDS (sitting by designation), JJ., concur.