**CITY OF COLUMBIA CITY, Indiana, by its Municipally–Owned Electric Utility, Appellant–Petitioner Below,**

v.

**INDIANA UTILITY REGULATORY COMMISSION, Northeastern REMC and The Office of Utility Consumer Counselor, Appellees–Respondents Below.**

No. 93A02–9207–EX–346.

Court of Appeals of Indiana, Third District.

July 28, 1993.

Rehearing Denied Oct. 4, 1993.

Michael B. Cracraft, Philip B. McKiernan, Hackman McClarnon Hulett & Cracraft, Indianapolis, for appellant-petitioner below.

Randolph L. Seger, Robert B. Scott, McHale, Cook & Welch, P.C., Indianapolis, John S. Bloom, Bloom, Bloom & Gage, P.C., Columbia City, for appellees-respondents below.

STATON, Judge.

In this consolidated appeal, two orders of the Indiana Utility Regulatory Commission ("Commission") are challenged. Northeastern REMC ("REMC") appeals Commission Order 38974 granting the City of Columbia City ("Columbia City") authority to modify its electrical service boundaries to serve annexed commercial territory. Four (restated) issues are presented for our review:

 I. Whether the Commission erroneously interpreted the Electricity Suppliers' Service Area Assign-

ments Act, IND.CODE 8–1–2.3, ("Act") to find a legislative preference that municipal utilities serve areas annexed by the municipality.

II. Whether the Commission failed to comply with the Act by making specific findings on the financial ability of Columbia City to serve annexed territory.

III. Whether the Commission disregarded substantial evidence of an annual operating deficit to Columbia City resulting from its proposal.

IV. Whether the Commission erroneously elevated the stated preferences of Columbia City officials over those of Whitley County officials.

Columbia City appeals Commission Order 39202 denying Columbia City's petition to modify its electrical service boundaries to serve annexed residential territory. Two additional (restated) issues are raised in the appeal of the second order:

V. Whether the Commission erred in admitting legal opinion testimony from the former Commission Chairman concerning appropriate factors for the Commission's consideration.

VI. Whether the Commission erred as a matter of law in specifically considering the financial ability (in addition to technical ability) of Columbia City to serve annexed territory.

We affirm.

On April 16, 1990, Columbia City filed a petition with the Commission requesting a modification of assigned service area boundaries to permit Columbia City to provide electrical service to a newly annexed territory consisting of 30 commercially-zoned acres ("annexed territory"). REMC had previously installed electrical facilities in the annexed territory.

Public hearings were held on July 16, 17 and 18, 1991. On April 1, 1992, the Commission issued its order granting Columbia City authority to modify its assigned ser-

vice area boundaries. Additionally, the Commission ordered Columbia City to pay REMC the sum of $296,208.97 as actual and severance damages. Record, p. 335.

On May 16, 1991, Columbia City filed its petition seeking approval of a change in its electrical service boundaries to provide electrical service to a portion of newly annexed residential territory consisting of 120 acres. Public hearing was held on November 6, 7 and 8, 1991. On July 1, 1992, the Commission denied the petition.

Judicial review of Commission decisions is governed by IND. 8–1–3–1, providing in pertinent part: "An assignment of errors that the decision, ruling, or order of the commission is contrary to law shall be sufficient to present both the sufficiency of the facts found to sustain the decision, ruling, or order, and the sufficiency of the evidence to sustain the finding of facts upon which it was rendered."

■ Decisions of the Commission are reviewed under a multiple-tiered standard of review. First, we determine whether or not the decision is supported by specific findings of fact and by sufficient evidence. Second, we consider whether or not the decision is contrary to law. *Citizens Action Coalition v. PSI* (1991), Ind., 582 N.E.2d 330, 333, *reh. denied.*

## I.

### *Legislative Intent*

REMC claims that the Commission erroneously detected, in construing the Act, a "preference" for municipally owned utility service in municipally owned territory; thus, the Commission was biased in favor of granting a service reassignment.

REMC contends that the legislature's intent was to protect the rights of existing electricity suppliers, as evidenced by a "general rule" providing for stability. REMC recognizes a "narrow exception" in the provision for change only upon the establishment of certain criteria within a narrow time frame.[1] That is, established

---

1. I.C. 8–1–2.3–6(1) provides that a municipal utility has 60 days after annexation to petition the Commission for territorial realignment.

boundaries will be realigned only where the "public convenience and necessity" is served.

Columbia City responds that the Commission recognized the plain meaning of the Act and displayed no bias.

IND.CODE 8–1–2.3–6 provides that boundaries of assigned service areas of electricity suppliers may be changed only in certain circumstances, including municipality annexation, upon mutual agreement or the intersection of two boundary lines upon a single tract of land (a "split-site" situation). Pursuant to I.C. 8–1–2.3–6(1), the reassignment of boundaries upon municipality annexation may be ordered "if, upon notice and after hearing, the commission decides that it is in the public convenience and necessity for the municipally owned electric utility to render service to the annexed area."

In determining public convenience and necessity, the commission must consider all relevant matters, including but not limited to: (1) the preference of owners, occupiers and consumers in the annexed area, (2) the ability of the municipally owned electric utility to render service, (3) other utility services to be supplied in the annexed area by the municipality, (4) the proximity and capability of the service repair facilities of the electricity suppliers involved and (5) the preference of local government officials. *Id.*

With regard to REMC's argument against the existence of a statutory presumption in favor of municipally-owned service, the Commission's order provided:

"Respondent contends that the Electricity Suppliers' Service Area Assignments Act (I.C. 8–1–2.3–1 *et seq.*) does not require automatic assignment of annexed territory to a municipal electric utility nor does it reflect a presumption that municipalities should serve annexed territories. The Commission agrees that the annexation of property does not require automatic transfer of territorial rights to a municipal utility. We also agree that the statute does not contain a presump-

tion that a transfer should be made upon annexation. However, we do believe the language of I.C. 8–1–2.3–4 does indicate a preference for a municipal utility serving all of a municipality, if the utility can provide adequate and reliable service and desires to do so. First, we note the Legislature directed that actions be taken in the original assignment of territories '... to assure that only one (1) electricity supplier shall serve within the existing municipal limits: ...' Then, the Legislature provided that assigned service areas '... may not be changed except under any one (1) of the following circumstances: ...' The first exception provides that a municipality may petition to serve newly annexed territory, if the municipality has its own electric utility. No other type of utility can petition in this manner. Therefore, some deference has been given to the municipality if certain conditions are met and if it is in the public convenience and necessity. The Commission does have the statutory responsibility to consider all relevant factors in rendering a finding on public convenience and necessity. As we have stated in numerous Commission orders, service area boundary cases are extremely fact sensitive and the Commission considers each case upon its individual merits."

Record, pp. 332–33.

 The creation and realignment of utility service territories is a legislative function. This court is obliged to give effect to a clear legislative scheme of utility territorial alignment, without the necessity of interpreting statutory language so as to bring about territorial realignment by implication. *Public Serv. Co., Inc. v. Knox County Elec. Corp.* (1976), 170 Ind.App. 576, 354 N.E.2d 301, 305, *reh. denied.* A plain reading of the Act leads to the conclusion that a territorial realignment should take place only after significant Commission scrutiny.

There exists no explicit or implicit statutory preference in the Act for municipally

owned utility service in municipally owned territory. The recognition of such a preference in the instant case was contrary to law.

## II.

### Findings Relative to Financial Ability—Order 38974

REMC contends that the "ability to render service" as utilized in I.C. 8–1–2.3–6(1) necessarily includes the *financial* ability to render service. In REMC's view, Columbia City should have offered for the Commission's consideration a financial or economic feasibility analysis relative to its provision of electrical service in the annexed territory.

The final order of the Commission does not include specific findings on REMC's *financial* ability to provide service, focusing instead on technical ability to provide service. Based on the contention that evidence of financial ability is statutorily required, REMC moved to dismiss Columbia City's petition pursuant to Ind.Trial Rule 41(B). Columbia City Mayor Joseph Zickgraf admitted that the prefiled testimony of Columbia City included no incremental cost analysis or other economic feasibility study. Record, p. 534.

On appeal, REMC claims that the denial of dismissal and the ultimate finding of public convenience and necessity absent economic evidence is arbitrary and capricious, contrary to law and unsupported by substantial evidence. [Brief of Appellant, p. 25]

Columbia City responds that the Commission made findings on each factor enumerated in I.C. 8–1–2.3–6(1), as required for a determination of the public convenience and necessity. Record, pp. 319–24. I.C. 8–1–2.3–6 does not include a definition of the term "ability." Columbia City contends that no case interpreting I.C. 8–1–2.3–6 has held that proof of financial ability is required. However, REMC points out that Order 39202 incorporated specific findings on financial ability and economic feasibility.

■ REMC contends that an assessment of public necessity in electric service cases should be consistent with an assessment of public necessity in other utility service cases, i.e., taking into account the "economic feasibility" of a proposal. "Public necessity" is not a concept susceptible to a precise definition. *Town of Merrillville v. Public Storage* (1991), Ind.App., 568 N.E.2d 1092, 1097, *trans. denied.* This court has not established for all cases a qualitative and quantitative evidentiary standard for proof of public convenience and necessity. *Ram Broadcasting of Ind. v. MCI Airsignal* (1985), Ind.App., 484 N.E.2d 26, 30. Commission findings of public convenience and necessity are scrutinized for a rational relationship between the facts found and conclusions reached. *Id.* at 31.

■ An administrative agency must make sufficient basic factual findings to support the ultimate findings required by law. *Indiana Bell Tel. Co. v. T.A.S.I., Inc.* (1982), Ind.App., 433 N.E.2d 1195, *reh. denied, trans. denied.* In order to secure a certificate of authority to provide expanded *telephone* service, the petitioner must show that it has the "financial and managerial ability to render such service" (interpreting IND.CODE 8–1–2–88(b). *Id.* at 1201. *See In re Charter Network Co.*, IURC Cause No. 39245 (November 20, 1991); *In re GTE Telecom Inc.*, IURC Cause No. 38618, 1988 WL 391488 (November 30, 1988).

In order to secure a certificate of authority to provide expanded *sewage disposal* service, a petitioner must show that it possesses "... financial ability to install, commence, and maintain said proposed service; ..." IND.CODE 8–1–2–89(e)(2). *See In re Avon Utilities, Inc.*, IURC Cause No. 38757 (September 6, 1989); *In re Utility Center, Inc.*, IURC Cause No. 39262 (June 10, 1992).

IND.CODE 8–1–2–87(d) provides that a gas service petitioner must show "that he or it has the financial ability to provide the proposed gas distribution service, that public conveyance and necessity require the ... service." Considering petitions for a necessity certificate to furnish gas service,

the Commission has considered financial ability to provide the service. *In re Indiana Natural Gas Corp.*, IURC Cause No. 39133 (December 18, 1991); *In re NIP-SCO*, IURC Cause No. 39402 (June 3, 1992).

In contrast, the IURC cases involving a change of boundaries for providing *electrical* service have not traditionally focused on *financial* ability as a general rule. *See City of Bluffton v. Indiana & Michigan Electric Co.*, PSCI Cause No. 37736 (May 22, 1985) Appellee Appendix, p. A–43; *In re City of Crawfordsville*, IURC Cause No. 38726, 1989 WL 418726 (September 27, 1989); *In re City of Gas City*, IURC Cause No. 38391 (February 10, 1988); *In re City of Greenfield*, IURC Cause No. 38840 (June 6, 1990); *City of Greenfield v. PSI Energy, Inc.*, IURC Cause No. 38946 (August 1, 1990).

However, financial ability may be a relevant matter to be considered by the Commission. In Cause No. 39202, the Commission considered "economic feasibility" as a "factor raised by the parties." The Commission considered—as "another factor" in addition to statutory factors—the economic effect of a boundary change on the respondent in *City of Greenfield v. Hancock REMC*, IURC Cause No. 38945 (November 21, 1990). Also, the respective financial abilities of two competing electric providers were considered in *In re PSI and Tipmont REMC*, IURC Cause No. 38219 (May 18, 1988). A discussion of respective costs to provide service is included in *Johnson REMC v. PSI* (1978), 177 Ind.App. 53, 378 N.E.2d 1, reviewing a Commission order granting a certificate of public convenience and necessity to provide electrical service (pre-dating the current statute).

■ Thus, the Commission may consider evidence of economic feasibility, costs, potential rate increases, etc. where raised by the parties to an electric service reassignment petition, for example, where one party is purchasing the assets of another. Implicit in "ability" to serve the public is the possession of financial "ability." Where financial ability is divorced from "ability," the consumer cannot be best served.

Although the legislature intended to give stability to the provision of electric service, the intent was not to place the Commission in a straight jacket. The enumerated criteria are touchstones which other matters may reflect upon; the Commission is not constrained to consider only the enumerated factors. We conclude that the customer is better served where the Commission considers the total "ability" of the utility to serve.

IND.CODE 8–1–2.3–1 declares the express policy of the Act:

> "It is declared to be in the public interest that, in order to encourage the orderly development of coordinated statewide electric service at retail, to eliminate or avoid unnecessary duplication of electric utility facilities, to prevent the waste of material and resources, and *to promote economical, efficient, and adequate electric service to the public*, the currently unincorporated areas of Indiana shall be divided into designated geographic areas within which an assigned electricity supplier has the sole right to furnish retail electric service to customers."

(Emphasis added.)

The promotion of economic and efficient service is an express purpose of the Act. Ultimately, the public convenience and necessity is not served if the ratepayers must suffer increases occasioned by economically infeasible decisions regarding service provision. As stated by this court in *Decatur County REM Corp. v. Public Serv. Co. of Ind.* (1970), 146 Ind.App. 699, 710, 258 N.E.2d 180, 187, *reh. denied:* "The efficiency and economy of rendering utility service to a particular customer or area ultimately has an effect on all customers being served. It is this broader interest— the public interest—which is paramount." An unduly restrictive interpretation of the Act does not serve the public.

■ While evidence of Columbia City's financial ability to provide service to the annexed territory may have been desirable in this case, it was not submitted by Columbia City to the Commission. Therefore,

such evidence could not have been reflected in specific findings of the Commission.[2] It was not *statutorily* required. An electric territorial realignment is a creature of statute. Here, the Commission followed the applicable statute and made specific findings pursuant to I.C. 8–1–2.3–6(1)(A)–(E). These findings have evidentiary support. We cannot conclude that the decision of the Commission is arbitrary, capricious or contrary to law.

## III.

### *Evidence of Annual Operating Deficit*

■ Next, REMC argues that the Commission erroneously ignored substantial evidence of an annual operating deficit which would be experienced by Columbia City in the event of electrical service area reassignment. The "substantial evidence" of an operating deficit is comprised of an "incremental cost analysis presented to Columbia City's witness, Tony Zickgraf, on cross-examination." [Brief of Appellant, p. 44] That document purportedly shows a projected annual loss of at least $23,000. Record, p. 236.

Columbia City presented, in response to REMC's incremental cost analysis, an "Annual Summary of Incremental Revenue vs. Incremental Costs for Columbia City Municipal Electric Utility Service to Shopping Center." Record, p. 261. This document discloses a net annual estimated income of $8,298.

The Commission considered the claims concerning projected revenues, rejected REMC's "hypothetical" calculations and found the "opportunity cost of funds" incremental expense to be inappropriate. Moreover, the Commission found the testimony of (Board of Works Manager) Tony Zickgraf—who was subjected to cross examination regarding REMC's cost analysis—persuasive. Record, pp. 326, 332, 334. Although the Commission was required to consider the relevant evidence before it, the Commission was not constrained to give an individual exhibit particular weight. The Commission chose not to give significant weight to the "incremental cost analysis" of REMC. Mindful of our limited standard of review, this court will not reweigh the exhibits and elevate the incremental cost analysis of REMC over the responsive exhibit of Columbia City. *Greenwood Profess. Park v. Pub. Serv. Com'n.* (1986), Ind.App., 487 N.E.2d 472, 474.

## IV.

### *Preferences of Officials*

■ Finally, REMC argues that the Commission erroneously elevated the preferences of Columbia City officials over those of Whitley County officials.

The Commission is statutorily required to consider the preferences of "local government officials." I.C. 8–1–2.3–6(1)(E). The Commission's order reflects its consideration of the expressed preferences of both city and county officials, although greater weight was given to the preferences of the former group. The Commission determined that the county officials failed to articulate reasons for their position or subject themselves to cross examination. Record, p. 330.

Neither party argues the existence of case law defining "local governmental official" or prescribing or forbidding a hierarchy for the preferences of groups of officials.

In the exercise of its discretion, the Commission accorded the preferences of county officials lesser weight because of inadequate articulation of reasoning and the absence of cross examination. The record reflects that the City officials testified and were available for cross examination. The finding of the Commission is one which has reasonable evidentiary support. This court will not reweigh the evidence and substitute a finding for that of the Commission. *Greenwood, supra,* at 474.

---

**2.** We note that REMC attempted to produce—on cross examination of a Columbia City witness— a financial statement purportedly showing a projected net operating utility deficit by Colum-bia City. However, the Commission chose not to afford the statement great weight because the figures contained therein were not supported by testimony and were considered "hypothetical."

## V.

### Admission of Duvall Testimony at Hearing—Order 39202

█ Leslie Duvall, a former Chairman of the Commission, former State Senator, an attorney and professor of law, testified before the Commission for the "purpose of giving his 'opinion on the appropriate scope of these proceedings and the legal issues attendant thereto.'" Record p. 307. Columbia City objected to Duvall's pre-filed direct testimony and the Commission struck certain parts. *Id.* The Commission then said:

"The stated purpose of Mr. Duvall's testimony was to aid the Commission in arriving at the correct definition of 'public convenience and necessity.' Mr. Duvall testified that he examined the legislative history of IC 8–1–2.3–6, studied and analyzed the four (4) corners of the statute itself, and reviewed the previous statements and positions taken by the Commission on the issue of public convenience and necessity. *Mr. Duvall stated that in his opinion 'a determination of public convenience and necessity is not limited by subsections A, B, C, D, and E as set forth in Section 6(1).'* However, on cross-examination, Mr. Duvall made it clear that to be orderly and consistent, decisions of the Commission should be guided by principles which are well stated and followed."

Record p. 307. (Emphasis added.) Columbia City claims that, by admitting Duvall's testimony, the Commission improperly shifted to him its responsibility to determine the scope of the proceedings and the meaning of public convenience and necessity. Columbia City also claims Duvall's testimony "solely involved questions of law, which matters are not an appropriate subject of opinion testimony." Columbia City's Brief of Appellant at 12 *citing Ledcke v. State* (1973), Ind., 260 Ind. 382, 296 N.E.2d 412, 420. Columbia City then asks us to "reverse the Order and remand to the Commission with instructions to exclude from evidence the legal opinion testimony of Mr. Duvall."

We first note that *Ledcke* is a drug possession case. We fail to see any nexus between an administrative proceeding and a criminal case. Columbia City's reliance on *Ledcke* is misplaced. We also note that Columbia City does not contend that Duvall's testimony prejudiced its case before the Commission. Columbia City only contends that the Commission abused its discretion by admitting Duvall's testimony. We also note that Duvall's testimony is only mentioned by the Commission in two paragraphs of a twenty-eight (28) page single-spaced Final Order. Record p. 307.

It appears to us that Duvall testified as to ultimate factual issues, not to legal conclusions. A legal conclusion is where an expert states his opinion as to how the case should be decided. McCormack, *Evidence* § 12 (1972). In Indiana, expert opinion on the ultimate fact in issue is not objectionable. Robert L. Miller 13 *Indiana Practice* § 704.01 (1993 supp.) and cases cited. In the instant case, if Mr. Duvall had opined that a change in Columbia City's service area was not in the public convenience and necessity, he would have made a legal conclusion. However, Duvall did not testify as to "who should win"—he testified as to what *facts* might be relevant to the Commission's decision as to "who should win." The Commission did not err in allowing Duvall's testimony. In addition, where Columbia City makes *no* claim of prejudice, it is clear that his testimony could not have harmed the City.

## VI.

### Financial Ability of Columbia City—Order 39202

█ In issuing Order 39202, the Commission made findings which were not strictly limited to the five enumerated factors bearing on the public convenience and necessity as stated in I.C. 8–1–2.3–6(1), but also considered Columbia City's "financial ability" to serve and the "economic feasibility" of the proposed territorial realignment. The Commission justified the consideration of economic data by observing the uniqueness of the circumstances presented:

"In previous cases before this Commission involving requests by municipal electric utilities for a change in service boundaries, the economics of the transaction were not an outwardly significant issue, primarily due to the fact that in many of such cases there were little or no electric facilities in place, few or no customers and minimal or no severance damages to be paid by the petitioning municipality or electricity supplier. Additionally, the issue of economic or financial feasibility of such transactions in prior cases was generally not raised. If, however, the service boundaries are modified as requested by Petitioner herein, Petitioner will be required to pay a significant amount of actual and severance damages. Both Petitioner and Respondent devoted a considerable amount of time to either addressing or refuting the economics of the proposed electric boundary change."

Record, p. 328.

The Commission found that Columbia City "failed to present any direct evidence, by way of an incremental cost analysis or otherwise, regarding the economic feasibility or financial impact of the proposed electric service boundary change." Record, pp. 320–21. Further, the Commission concluded: "Petitioner appears not to have even satisfied its own express policy decision— to provide electricity service to its customers only when it is economically feasible to do so." Record, p. 323. Specifically, the Commission found that Columbia City had experienced a deficit utility operating income of ($118,000) for calendar year 1989 and a deficit utility operating income of ($406,675) for calendar year 1990. Record, pp. 320, 324. The finding is based in part upon Columbia City's submission of its 1990 Annual Report containing general financial statements. Record, pp. 625–648.[3]

Columbia City contends that the Commission acted contrary to law by determining that "all relevant matters" of I.C. 8–1–2.3–6 may include "economic feasibility" and

"financial ability." Columbia City complains that the Commission actually engaged in an unlawful exercise of statutory power.

Clearly, pursuant to I.C. 8–1–2.3–6(1), the Commission is not constrained to consider *solely* the enumerated factors of that statutory provision, inasmuch as "all relevant matters" may be considered. Here, the Commission made specific findings relative to the "other factors" of economic feasibility and financial ability, which findings were necessary for the Commission's determination of the ultimate issue of the "public convenience and necessity." *See In re Tipmont Rural Electric Membership Corporation,* IURC Cause No. 38726 (September 27, 1989) (in considering "ability to serve," the Commission contemplated the lack of adverse effects on the Petitioner's present customers by its servicing the new area); *In re PSI and Tipmont REMC, supra* (Commission considered the respective financial abilities of two competing electrical providers); *In re the Town of Ferdinand,* IURC Cause No. 38783, 1990 WL 488873 (April 9, 1990) (Commission responded to argument that Petitioner could not generate the necessary funds to supply utilities to an annexed area).

In the instant case, the enumerated factors of I.C. 8–1–2.3–6(1)(A)–(E) did not dispositively show Columbia City's preferences of owners and consumers, the Commission was "not impressed with the evidence submitted on this factor." Record, p. 309. The only public witness testimony presented was by three witnesses expressing a preference for REMC to continue to provide service to the annexed area. Record, pp. 327, 1312–1322, 1326–1333, 1338–1344. Concerning "ability to serve," both Columbia City and REMC were found to have service repair facilities within reasonable proximity of the annexed area. The Commission also found a "greater probability" of reliable service if REMC continued to serve the area. Record, p. 327. The Commission concluded that Columbia City

---

**3.** In contrast, the Commission found that REMC was not generating deficit revenues from its utility operations. Record, p. 326.

"failed to engage in planning and engineering sufficient to answer the serious concerns ... regarding the reliability of [its] system." Record, p. 314. The factor relating to local government official preference was found to weigh in Columbia City's favor. *Id.* It was uncontroverted that other utility services in the annexed area were to be provided by Columbia City. Record, p. 315.

Columbia City, as the petitioner, bore the burden of showing that granting its application would be "in the public convenience and necessity." I.C. 8–1–2.3–6. Notwithstanding the Commission's consideration of relevant matters such as financial feasibility, the Commission's findings concerning the specific factors listed in I.C. 8–1–2.3–6(1)(A)–(E) support the denial of Columbia City's petition.

However, the Commission was not constrained by statute to consider only the specific factors of I.C. 8–1–2.3–6(1)(A)–(E). Regarding economic feasibility of the proposed service boundary change, the Commission indicated that the "record is devoid of any evidence supportive of [the City's] assertion that its providing service to the annexed area would be economically feasible." Record, p. 323. The Commission was left with the "impression" that "the extent of Petitioner's analysis of the financial or economic feasibility of providing service to the annexed area is based on the hope that substantial growth [will occur] and that somehow this growth will result in a net benefit to Petitioner." *Id.*

With regard to Columbia City's "financial ability" to serve the annexed area, the Commission concluded: "The reality of Petitioner's situation is that Petitioner's utility operating expenses are in excess of its operating revenues resulting in a deficit utility operating income. As a result, we are concerned with Petitioner's financial condition." Record, p. 325. This finding of the Commission has substantial evidentiary support.

To summarize, the Commission found: "that considerable weight should be given to the economics of the transaction and the potential effect to the public—

Petitioner's public, Respondent's public and the general public of the State of Indiana. We find Respondent's evidence persuasive with respect to the economic infeasibility of Petitioner serving the annexed area. The evidence supports the finding that if the annexed area were assigned to Petitioner, Petitioner must pay Respondent at least $158,000 for actual and severance damages, which is a significant expenditure to be recovered from Petitioner's ratepayers. The Petitioner presented no evidence to this Commission that demonstrated an economic benefit to either its customers or the public in general. While the Petitioner's witnesses did testify that it considered economic feasibility, such was not based on any studies or economic analysis, but was based on the fact Petitioner has enough cash on hand to pay the severance damages and on hope that certain areas beyond the annexed area will experience substantial growth and that somehow this growth will benefit Petitioner. There appears to be no economic justification from a public interest standpoint for this Commission to authorize the requested change."

Record, p. 328.

Here, the Commission expressed concern that Columbia City intended to operate its electric utility at a deficit with hopes that future expansion and consequent revenues would correct the deficit situation. The Commission was charged with reaching an ultimate conclusion as to the public convenience and necessity. The public convenience and necessity is served where there is adequate *and* economic provision of electrical service.

The Commission was not required to engage in new rule making, inasmuch as I.C. 8–1–2.3–6(1) plainly confers upon the Commission the authority to consider all "relevant matters." Clearly, Columbia City's operating deficit was a relevant matter. The Commission engaged in an adjudicative rather than legislative function.

The Commission did not act contrary to law in its consideration of Columbia City's

financial ability to serve the annexed territory.

Each of the orders of the Commission is affirmed.

SHARPNACK, C.J., and MILLER, J., concur.