HANCOCK COUNTY RURAL ELECTRIC MEMBERSHIP CORPORATION d/b/a Central Indiana Power, Appellant–Respondent,

v.

CITY OF GREENFIELD, Indiana, Appellee–Petitioner.

No. 93A02–0102–EX–94.

Court of Appeals of Indiana.

March 21, 2002.

David S. Richey, Robert J. Donahue, Indianapolis, IN, Attorneys for Appellant.

C. Thomas Billings, Greenfield, IN, Michael B. Cracraft, Steven W. Krohne, Indianapolis, IN, Attorneys for Appellee.

## OPINION

HOFFMAN, Senior Judge.

Respondent/Appellant Hancock County Rural Electric Membership Corporation, d/b/a Central Indiana Power ("Central Indiana") appeals a determination by the Indiana Utility Regulatory Commission (the "Commission") in favor of Petitioner/Appellee City of Greenfield, Indiana ("Greenfield"). We affirm.

Central Indiana raises three issues for our review, which we restate as:

I. Whether the Commission's grant of Greenfield's petition for change of service area boundaries was contrary to law because Greenfield did not meet the requirements set forth in either Ind.Code § 36–4–3–13(b)(2) or Ind.Code § 36–4–3–13(c)(2).

II. Whether the Commission's grant of Greenfield's petition for change of service area boundaries was supported by sufficient evidence that Greenfield complied with the requirements of Ind.Code 8–1–2.3–6(1) in regard to the content of the annexation ordinance.

III. Whether the Commission's grant of Greenfield's petition for change of service area boundaries was supported by sufficient evidence to establish that the change of service was in the public convenience and necessity.

Central Indiana is a rural electric distribution cooperative providing electric service to approximately 8,600 consumers in Hancock, Henry, Madison, Rush, and Shelby Counties. Greenfield owns a municipal electric utility that furnishes electric services to approximately 7,248 consumers in and around its city limits. Both Central Indiana and Greenfield are electricity suppliers within the meaning of Ind.Code § 8–1–2.3–2(b).[1]

The owners of all but 1.4 acres of a 236–acre tract of real estate petitioned the City of Greenfield for annexation of the entire tract. The tract was outside the assigned service area of Greenfield's municipally owned electric utility. In response to the petition, Greenfield's Common Council adopted Ordinance No.2000–1, an ordinance changing and extending the corporate boundaries of Greenfield to include the tract. (hereinafter, the "annexed area"). No remonstrance was filed challenging the annexation of the tract or Greenfield's fiscal plan.

Thereafter, Greenfield filed a petition with the Commission pursuant to Ind.Code § 8–1–2.3–6(1) in which it sought the Commission's approval to change its assigned service area boundaries to include the annexed area. The Commission held a public hearing at which both Central Indiana and Greenfield presented evidence. The Commission subsequently granted Greenfield's petition, and it issued findings of fact and conclusions of law in support thereof. It is this determination that is the subject of this appeal.

■ This court is authorized to review Commission decisions as provided in Ind. Code § 8–1–3–1. *City of Columbia City v. Indiana Utility Regulatory Commission,* 618 N.E.2d 21, 23 (Ind.Ct.App.1993). In reviewing the Commission's order, this court applies a two-tier standard of review. *Knox County Rural Electric Membership Corp. v. PSI Energy, Inc.,* 663 N.E.2d 182, 189 (Ind.Ct.App.1996), *trans. denied.* We determine whether a decision is supported by specific findings of fact and by sufficient evidence. *Id.* Furthermore, we consider whether the decision is contrary to law. *Id.*

Central Indiana first contends that the Commission's determination is contrary to law in that the Commission erred in concluding that Greenfield met the requirements set forth in Ind.Code § 8–1–2.3–6(1) for change of service area boundaries. Ind.Code § 8–1–2.3–6(1) provides that a

---

**1.** Ind.Code § 8–1–2.3–2(b) defines an "electricity supplier" as a "public utility, a local district rural electric membership corpora- tion, or a municipally owned electric utility which furnishes retail electric service to the public."

municipally owned electric utility may petition to change its assigned service area if it has annexed an area beyond its assigned service area, and the ordinance providing for annexation meets certain requirements. The statute also provides that the Commission will order the assigned service area of the municipally owned electric utility to be changed if, after notice and a hearing, the Commission decides that "it is in the public convenience and necessity for the municipally owned electric utility to render service to the annexed area. . . ." These provisions are not the subject of Central Indiana's first contention.

Central Indiana premises its first contention on the portion of the statute providing, in pertinent part, that the statute's change of service provisions do not apply if the annexation "was not contiguous under IC 36–4–3–13(b) or IC 36–4–3–13(c)." Ind. Code § 36–4–3–13(b) provides that "a court shall order a proposed annexation to take place" if the evidence establishes the following: "(1) That the territory sought to be annexed is contiguous to the municipality[;]" and, "(2) One (1) of the following: (A) The resident population density of the territory sought to be annexed is at least three (3) persons per acre. (B) Sixty percent (60%) of the territory is subdivided. (C) The territory is zoned for commercial, business, or industrial uses." Ind. Code § 36–4–3–13(c) provides that "a court shall order a proposed annexation to take place" if the evidence establishes the following: "(1) [T]he territory sought to be annexed is contiguous to the municipality as required by section 1.5 of this chapter, except that at least one-fourth (¼), instead of one-eighth (⅛), of the aggregate external boundaries of the territory sought to be annexed must coincide with the boundaries of the municipality[;]" and, "(2) That the territory sought to be annexed is needed and can be used by the municipality for its

development in the reasonably near future."

Central Indiana reads this provision of Ind. Code § 8–1–2.3–6(1) as requiring Greenfield to show compliance with the whole of one of these two subsections. In other words, Central Indiana reads the statute to require Greenfield to show under Ind. Code § 36–4–3–13(b) that the tract was contiguous to Greenfield's boundaries pursuant 13(b)(1) and that one of the factors set forth in 13(b)(2) was present. In the alternative, Central Indiana reads the statute to require Greenfield to show under Ind. Code § 36–4–3–13(c) that the tract was contiguous pursuant to 13(c)(1) and that the tract was needed and can be used by Greenfield for its development in the reasonably near future pursuant to 13(c)(2).

■ We hold that Central Indiana has misread Ind. Code § 8–1–2.3–6(1), and in doing so, it has improperly added requirements thereto. The statute specifically states that its provisions allowing for a change of service area boundaries will not apply if annexations *are not contiguous under Ind. Code § 36–4–3–13(b) and Ind. Code § 36–4–3–13(c)*. The term "contiguous" is defined by Ind. Code § 36–4–3–1.5, which states in pertinent part that "[f]or purposes of this chapter, territory sought to be annexed may be considered 'contiguous' only if at least one-eighth (⅛) of the aggregate external boundaries of the territory coincides with the boundaries of the annexing municipality." When Ind. Code § 36–4–3–13(b)(1) states that a territory must be contiguous, it is referring to the requirements set forth in Ind. Code § 36–4–3–1.5. When Ind. Code § 36–4–3–13(c)(1) states that a territory must be contiguous, it is referring to a deviation of Ind. Code 36–4–3–1.5 as set forth therein. Central Indiana's interpretation of these statutory provisions is that the term "contiguous" is

defined by 13(b)(2) and 13(c)(2). The plain language of these provisions states otherwise. The requirements of Ind.Code § 36–4–3–13(b)(2) and Ind.Code § 36–4–3–13(c)(2), while germane to a determination of the validity of an annexation, have nothing to do with whether the property to be annexed is contiguous with the municipality seeking annexation. Therefore, the Commission was correct in not requiring Greenfield to show compliance with the requirements of Ind.Code § 36–4–3–13(b)(2) and Ind.Code § 36–4–3–13(c)(2).[2]

As we stated above, Ind.Code § 8–1–2.3–6(1) provides that a municipally owned electric utility may petition to change its service area boundaries if the ordinance providing for annexation meets certain requirements. Specifically, the statute provides that a municipally owned electric utility may petition to change its assigned service area if "the ordinance providing for the annexation provides that the annexing city has developed and adopted a fiscal plan . . . ."

Central Indiana contends that the Commission erred in determining that Greenfield met the requirements of the statute as it applies to the fiscal plan. In support of its contention, Central Indiana states its belief that the requirements of such a fiscal plan are set forth in Ind.Code § 36–4–3–13(d) and that Greenfield's plan fails to meet those requirements.

■ Again, Central Indiana reads too much into the statute. In Ind.Code § 8–1–2.3–6(1), the Legislature directs its attention to the contents of the pertinent ordinance, not to the contents of the fiscal plan. Furthermore, the adequacy of the fiscal plan under Ind.Code § 36–4–3–13(d) is determined by a court after the filing of a remonstrance, not by the Commission after the filing of a petition to change service area boundaries. *See generally,* Ind.Code § 36–4–3–5.1; Ind.Code § 36–4–3–11; *City of Hobart v. Chidester,* 596 N.E.2d 1374, 1375 (Ind.1992); *Town of Sellersburg v. Proposed Annexation of Certain Property Located in Clark County,* 677 N.E.2d 608, 610 (Ind.Ct.App.1997). The language of Ind.Code § 8–1–2.3–6(1) does not provide for a collateral attack upon the adequacy of the plan. The Commission did not err in determining that Greenfield complied with Ind.Code 8–1–2.3–6(1) as it pertains to the contents of the ordinance.[3]

In furtherance of its requirement that the Commission find that the grant of a municipally owned electric utility petition to a change of service area boundaries is "in the public interest and necessity," Ind. Code § 8–1–2.3–6(1) states that the Commission "shall give consideration to all relevant matters." The statute provides that these relevant matters include, but are not limited to (1) the preference of the owners, occupiers, and consumers in the annexed area; (2) the ability of the municipally owned electric utility to render service after the assignment of the service area; (3)

**2.** In its reply brief, Central Indiana makes references to the purpose of Ind.Code § 8–1–2.3–6(1) in support of its interpretation of the statute. Central Indiana cites *United Rural Electric Membership Corp. v. Indiana & Michigan Electric Co.,* 549 N.E.2d 1019, 1021 (Ind. 1990), in which our supreme court stated the purpose of the Act "was to draw permanent boundaries and eliminate the endless and numerous disputes over service areas." We agree with Central Indiana as to the purpose of the Act; however, we do not agree that the language of Ind.Code § 8–1–2.3–6(1) allows the conclusion that the Legislature intended the provisions of Ind.Code § 36–4–3–13(b)(2) and Ind.Code § 36–4–3–13(c)(2) to be definitions of the term "contiguous."

**3.** We note that a certified copy of Ordinance No.2000–1 was made a part of the record below. The ordinance contained the language required by Ind.Code § 8–1–2.3–6(1).

the nature of other utility services to be supplied in the annexed area by the municipality; (4) the proximity and capability of the service repair facilities of the electricity suppliers involved; and (5) the preference of local government officials.

Central Indiana contends that the Commission's grant of Greenfield's petition to change its service area boundaries was unsupported by findings of fact or by evidence showing that the granting of the application would be in the "public convenience and necessity." Central Indiana cites *City of Columbia City* in support of its contention.

■ In reviewing the Commission's findings, we determine "whether the Commission's decision contains specific findings on all the factual determinations material to its ultimate conclusions." *Citizens Action Coalition v. Public Service Co. of Indiana,* 450 N.E.2d 98, 101–02 (Ind.Ct. App.1983). We inquire "whether there is substantial evidence in light of the whole record to support the Commission's findings of basic fact." *Id.* Only evidence favorable to the Commission's decision is considered in determining whether the decision is supported by substantial evidence. *Wilfong v. Indiana Gas Co.,* 399 N.E.2d 788, 790 (Ind.Ct.App.1980). We may defer to the Commission's expertise in finding the facts and in applying the law to the facts. *Id.* We neither reweigh the evidence nor substitute our judgment for that of the Commission. *Greenwood Professional Park v. Public Service Commission,* 487 N.E.2d 472, 474 (Ind.Ct.App.1986).

In *City of Columbia City,* we considered two determinations by the Commission. In the first determination, the Commission granted the municipally owned electric utility's petition to expand its service area to include certain annexed property. The REMC opposing the petition argued that consideration of the factor regarding the ability of the municipally owned electric utility to render service under Ind.Code § 8–1–2.3–6(1) necessarily includes the financial ability to render service. 618 N.E.2d at 25. We noted that Commission cases involving a change of boundaries "have not traditionally focused on financial ability as a general rule." *Id.* at 26. We further noted, however, that financial ability "may be a relevant matter to be considered by the Commission." *Id.* We then held that the Commission may consider evidence raised by the parties regarding economic feasibility, costs, potential rate increases, and similar facts because implicit in "ability" to serve the public is the possession of financial "ability." *Id.* We noted that "[w]hile evidence of the municipal utility's financial ability to provide service to the annexed territory may have been desirable in this case, it was not submitted by [the municipal utility] to the Commission." *Id.* We observed that because of this lack of evidence financial ability could not have been reflected in the Commission's findings. *Id.* at 26–27. We ultimately upheld the Commission's determination because (1) findings of financial ability are not statutorily required; (2) the Commission made findings pursuant to the matters set forth in Ind.Code § 8–1–2.3–6(1); and (3) the Commission's findings were supported by the evidence.

In the second *City of Columbia City* determination, the Commission denied the municipally owned electric utility's petition to expand its service area boundaries to include another annexed area. This court noted that the Commission's determination was supported by evidence pertaining to the matters listed in Ind.Code § 8–1–2.3–6(1). *Id.* at 30. We also noted that the Commission considered evidence and made findings pertaining to the municipal utility's financial ability to provide service to the annexed area. *Id.* at 28–29. We fur-

ther noted the Commission's position that in previous cases, the economics of the transaction "were not an outwardly significant issue, primarily due to the fact that in many of such cases there were little or no electric facilities in place, few or no customers and minimal or no severance damages to be paid by the petitioning municipality or electricity supplier." *Id.* at 29. We then pointed to evidence which showed that the municipal utility's operating expenses were well in excess of revenues, and we held that the Commission "did not act contrary to law in its consideration of [the municipal utility's] financial ability to serve the annexed territory." *Id.* at 30–31.

■ Here, the Commission made findings on each of the statutory matters. The Commission found that the owners of real estate within the annexed area, as well as both retail customers (including an elementary school), preferred to be served by Greenfield because its electrical rates were considerably lower than Central Indiana's rates; one entity would be providing all municipal and city services; and the school's prior business relationships with Greenfield had been satisfactory. The Commission also found that Greenfield would also provide municipal water and sewage services to the annexed area and that Greenfield was capable of providing adequate and reliable service repair to the annexed area from repair facilities in reasonable proximity thereto. The Commission further found that local government officials had indicated their preference that Greenfield service the annexed area. Central Indiana does not dispute the validity of these findings.

On the matter pertaining to Greenfield's ability to render service, the Commission found that Greenfield had presented sufficient evidence to show that it had the financial resources to extend its distribution line to the annexed area. The Com-

mission also found that Greenfield had the capability to render adequate and reliable service to the annexed area. In a finding under the general heading of "Other Matters" and the specific heading of "Planning," the Commission found that although there were no plans on file for immediate development of the annexed area, there were numerous studies by Greenfield indicating growth and development potential over the course of the next decade. The Commission also found under this specific heading that while Central Indiana was critical of Greenfield's planning, it presented no specific evidence that would lead to the conclusion that Greenfield's planning led to unnecessary duplication of service, caused harm to Central Indiana, or had any impact upon the Commission's ultimate determination of public convenience and necessity. In a finding under the specific heading of "Relative Value of the Annexed Area," the Commission found that there was no evidence that the change in Greenfield's service area would cause substantial harm to Central Indiana. Finally, in a finding under the specific heading of "Economic Impact," the Commission found that a change in the service area benefited the consumer because Greenfield's retail rates were considerably lower than Central Indiana's rates.

The facts of this case parallel those of cases in which the Commission has found that "economics of the transaction [are] not an outwardly significant issue." The severance damages were minimal and there are currently few customers. These factors, coupled with evidence that Greenfield is economically strong and that the annexed area will generate additional revenues, are sufficient to support the Commission's grant of Greenfield's petition. We decline Central Indiana's invitation to reweigh the evidence and find otherwise.

The Commission did not err in determining that Greenfield complied with the requirements of Ind.Code 8–1–2.3–6(1) and that Greenfield's petition to change service area boundaries should be granted. We therefore affirm the Commission's order.

Affirmed.

ROBB, J., and VAIDIK, J., concur.